PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., and Friends of the Earth, Plaintiffs,

v.

CARTER–WALLACE, INC., Defendant.

Civ. A. No. 87–1884.

United States District Court,
D. New Jersey,
Civil Division.

April 20, 1988.

Edward Lloyd, Environmental Law Clinic, Newark, N.J., Terris, Edgecombe, Hecker & Wayne, Washington, D.C. by Bruce J. Terris, James M. Hecker, for plaintiffs.

Charles F. Gibbs, Glen Rock, N.J., Breed, Abbott & Morgan, Washington, D.C. by Barry L. Malter, Ellen Siegler, for defendant Carter–Wallace, Inc.

## OPINION

BARRY, District Judge.

Defendant Carter–Wallace, Inc. ("Carter–Wallace") is a corporation engaged in the manufacture of various consumer products. Its plant in Cranbury, New Jersey, has been discharging wastewater into the Cranbury Brook since 1975 pursuant to permits issued by the United States Environmental Protection Agency ("EPA") and the New Jersey Department of Environmental Protection ("DEP").

The first of these permits was issued by the EPA on December 19, 1975 and became effective on January 31, 1976. The permit—National Pollution Discharge Elimination System ("NPDES") permit No. NJ 0002666 (hereinafter "1975 Permit")—limited Carter–Wallace's allowable discharges of pollutants into the Cranbury Brook, including limitations on total suspended solids ("TSS"), biological oxygen demand ("BOD"), pH, and toxicity. The permit, by its terms, was to expire on January 31, 1981.

Beginning on June 27, 1979, Carter–Wallace repeatedly petitioned both the EPA and the DEP for a modification of the 1975 Permit, or for the replacement of that permit by one better suited to the Cranbury plant's operations. It is clear that the reason for the requested modification was that Carter–Wallace's lines and facility had expanded since the original permit application was filed and that it was using approximately 500,000 gallons of water per day rather than the 250,000 gallons recited in the permit application. No action was taken by the EPA to modify or replace the 1975 Permit, even after the January 1981 expiration date had passed. Pursuant to federal and state law, the 1975 Permit would remain in effect until a new permit was issued to replace it. 40 C.F.R. § 122.6 (1987); N.J.A.C. 7:14A–2.3(a) (1987).

On March 7, 1985, DEP issued a new permit, NJPDES No. NJ 0002666 (hereinafter "1985 Permit"), to regulate Carter–Wallace's Cranbury plant.[1] The 1985 Permit became effective on May 1, 1985 and, accordingly, on that date the 1975 Permit expired. There is some dispute as to the differences between the two permits, particularly as to whether the 1985 Permit sets a more lenient standard regarding TSS and BOD.

On May 13, 1987, plaintiffs Public Interest Research Group of New Jersey and Friends of the Earth brought suit against Carter–Wallace, pursuant to the citizen suit provision of the Federal Water Pollution Control Act (hereinafter "the Clean Water Act"), 33 U.S.C. § 1365 (1982). The complaint alleged 12 violations by Carter–Wallace of its 1975 Permit and 31 violations of its 1985 Permit. The vast majority of the effluent violations involve TSS and BOD. Plaintiffs seek an order enjoining Carter–Wallace from discharging wastewater from its Cranbury plant in violation of the 1985 Permit and requiring it to pay civil penalties to the United States, pursuant to 33 U.S.C. §§ 1319(d) and 1365(a), for violations of both the 1975 and the 1985 Permits.

Before me for decision is Carter–Wallace's motion for partial summary judgment. Citing the recent decision of the Supreme Court of the United States in *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* —— U.S. ——, 108

---

1. In April 1982, the responsibility for administering the NPDES permit system in New Jersey was transferred from EPA to DEP.

S.Ct. 376, 98 L.Ed.2d 306 (1987), it asserts that it should be granted summary judgment as to claims for penalties regarding both those violations of the 1985 Permit that pre-dated the filing of the complaint in this matter, and all violations of the 1975 Permit. According to Carter–Wallace, the citizen suit provision of the Clean Water Act, as interpreted in *Gwaltney*, does not cloak this Court with subject-matter jurisdiction over those claims. For the reasons that follow, I will grant Carter–Wallace's motion only as to violations of the expired 1975 Permit.

The citizen suit provision of the Clean Water Act provides as follows:

> Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
> (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter....
> The district courts shall have jurisdiction ... to enforce such an effluent standard or limitation ... and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a). "Effluent standard or limitation," as relevant to this action, is defined as "a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter." *Id.* § 1365(f)(6). The civil penalty provision referred to above states that

> [a]ny person who violates ... any permit condition or limitation ... in a permit issued under section 1342 of this title by the Administrator, or by a state ... shall be subject to a civil penalty not to exceed $10,000 per day of such violation.

*Id.* § 1319(d). It is pursuant to sections 1365(a) and 1319(d) that plaintiffs seek civil penalties for all violations of the 1975 and 1985 Permits.

In *Gwaltney*, the Supreme Court had occasion to examine the interrelationship between these two sections. The citizen groups in that case filed suit under the Clean Water Act alleging over 150 violations of Gwaltney's permit. 108 S.Ct. at 379. It was conceded by both parties that Gwaltney's last recorded violation of its permit had taken place in May 1984, one month prior to the date on which the complaint was filed. *Id.* at 380; 791 F.2d 304, 307 n. 7 (4th Cir.1986); 611 F.Supp. 1542, 1547 (E.D.Va.1985). Gwaltney moved to dismiss for lack of subject-matter jurisdiction, arguing that § 1365(a) requires a citizen group to allege that a discharger is violating its permit at the time the complaint is filed.

The district court held that § 1365(a) confers subject-matter jurisdiction over lawsuits alleging that a discharger had, prior to the filing of the complaint, violated its permit. 611 F.Supp. at 1550–51. Alternatively, the district court held that the citizen groups' complaint alleged in good faith that Gwaltney was continuing to violate its permit as of the date the complaint was filed. *Id.* at 1549 n. 8. The relief ordered by the district court was limited to approximately $1.3 million in civil penalties for the recorded violations which predated the filing of the complaint; injunctive relief, in the form of ordering Gwaltney to conform to its permit, was not granted. 611 F.Supp. at 1565.

Gwaltney appealed the imposition of civil penalties, and the Court of Appeals for the Fourth Circuit affirmed, holding that § 1365(a) "can be read to comprehend unlawful conduct that occurred only prior to the filing of a lawsuit as well as unlawful conduct that continues into the present." 791 F.2d at 309. The Court of Appeals specifically declined to address the district court's alternate holding that good-faith allegations of continuing violations suffice to meet § 1365(a)'s jurisdictional test. *Id.* at 308 n. 9.

The Supreme Court reversed, holding that to allege that a discharger violated its permit prior to the filing of a complaint was insufficient under § 1365(a) to confer subject-matter jurisdiction over a claim for such "wholly past" violations. The Court focused on the language of § 1365(a), in particular noting "the pervasive use of the present tense." Citizen groups must allege the discharger "to be in violation" of an effluent standard "which is in effect," and the groups must possess an interest "which

is or may be adversely affected." 33 U.S.C. §§ 1365(a), (f), (g); 108 S.Ct. at 382. The Court observed that

> [t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future.

108 S.Ct. at 381.

The Supreme Court also drew a careful distinction between the Administrator's ability to seek penalties, governed by § 1319(d), and the ability of a citizen group to seek penalties, governed by the conjunction of sections 1365(a) and 1391(d). The Court repeated an observation it had made the previous Term, in *Tull v. United States,* — U.S. —, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), that the Administrator's power to seek injunctive relief was provided by § 1319(b) while his power to seek penalties was provided by a different and distinct section of the Clean Water Act, § 1319(d). 108 S.Ct. at 382. The court continued:

> In contrast, [§ 1365] does not authorize civil penalties separately from injunctive relief; rather, the two forms of relief are referred to in the same subsection, even in the same sentence. 33 U.S.C. § 1365(a). The citizen suit provision suggests a connection between injunctive relief and civil penalties that is noticeably absent from the provision authorizing agency enforcement. A comparison of [§ 1319] and [§ 1365] thus supports rather than refutes our conclusion that citizens, unlike the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation.

*Id.*

Having rejected the Fourth Circuit's conclusion that wholly past violations alone could serve to support a claim under § 1365(a) for civil penalties, the Supreme Court went on to address the district court's alternate holding. The Court found that § 1365(a) "confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation...." *Id.* at 385. Pursuant to that finding, the Supreme Court remanded the case to the Court of Appeals for consideration of the district court's finding—unreviewed as yet by that court—that the citizen groups in *Gwaltney* had alleged in good faith an ongoing violation by the discharger. *Id.* at 386.

Carter–Wallace contends that *Gwaltney* limits a citizen group to bringing suit under § 1365(a) for penalties regarding violations of a permit which occurred subsequent to the filing of the complaint. The *Gwaltney* court's conclusion that "the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past," 108 S.Ct. at 382, and that court's observation that citizens "may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation," *id.,* are interpreted by Carter–Wallace as limiting civil penalties in citizen suits to those violations which can be the subject of an injunctive order. Because, the argument continues, permit violations which have already occurred cannot be enjoined, it is only future violations—those taking place after the filing of the citizens' complaint—which are rightly the subject of civil penalties.

This argument misreads both *Gwaltney* and § 1365(a) of the Clean Water Act. Section 1365(a) is a jurisdictional grant permitting citizen groups to bring suits to enforce permits where the federal and state authorities have chosen, for whatever reason, not to act. So long as a citizen group in good faith alleges a discharger "to be in violation of an effluent standard," the district court "shall have jurisdiction ... to enforce such an effluent standard ... and to apply any appropriate civil penalties under section 1319(d)." 33 U.S.C. § 1365(a). Once a citizen group meets the jurisdictional threshold, the district court is empowered to impose any penalty appropriate under § 1319(d) for violations of that effluent standard, and § 1319(d)—unlike § 1365(a)—does not speak in terms of only present and future violations. While the *Gwaltney* court did indeed stress the prospective nature of citizen suits, that pro-

spective nature was stressed only as a limitation on the jurisdictional basis of those suits. When a citizen suit is properly commenced, as it was here, *Gwaltney* does not limit the relief which § 1319(d) affords the citizen group to only present and prospective penalties.

This reading of § 1365(a) and *Gwaltney* is consistent with the Supreme Court's order of remand in *Gwaltney*, whereas Carter–Wallace's reading would render nonsensical that order. As noted above, the district court in *Gwaltney* ordered only that civil penalties be imposed for Gwaltney's permit violations, all of which occurred prior to the filing of the complaint. 611 F.Supp. at 1547, 1565. The district court did not grant injunctive relief, and that decision was not appealed. Thus, when the case reached the Supreme Court, the issue of injunctive relief was not before that court for it had not been preserved by the citizen groups following the district court's determination.

The Supreme Court, in ordering the Court of Appeals to review the district court's finding that a good-faith allegation of continuing violations had been made, was remanding the case with the understanding that only civil penalties—and only civil penalties for pre-complaint violations—were to be imposed if the Court of Appeals affirmed the district court's finding. Stated somewhat differently, because the record of the case clearly indicated that injunctive relief and penalties for post-complaint violations were no longer possible, the Supreme Court could only have remanded the case with the intention that wholly pre-complaint violations could properly be the subject of civil penalties in a citizen suit, so long as a good-faith allegation of continuing violations supported subject-matter jurisdiction at the commencement of the action. Thus, Carter–Wallace's reading of § 1365(a) to permit only civil penalties for post-complaint violations not only fails to comport with the language

of sections 1365(a) and 1319(d) but transforms the Supreme Court's remand in Gwaltney into a meaningless act.[2]

 Carter–Wallace also argues that neither § 1365 nor *Gwaltney* allow penalties to be imposed in a citizen suit for violations of a permit which expired prior to the institution of the lawsuit. Plaintiffs counter by asserting that so long as jurisdiction properly attaches to a citizen's claim for penalties arising from a currently enforceable permit, that action may include claims for penalties arising from all of the discharger's violations of expired permits. For the reasons that follow, I reject both these views, and instead adopt a third position, one which I believe better reflects the concerns of § 1365 and *Gwaltney:* a citizen suit may seek penalties for violations of an expired permit only on the basis of those conditions of the expired permit which have been carried over to the current permit and which, therefore, are presently in force.

Carter–Wallace's contention is predicated in part on the *Gwaltney* court's ruling that "citizens ... may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation," 108 S.Ct. at 382, so that Carter–Wallace's expired permit, which cannot itself be the subject of injunctive relief, is not properly the subject of a citizen suit. Carter–Wallace points, as well, to the statutory language of § 1365: suits by citizen groups may be maintained only when they can allege the discharger "to be in violation of an effluent standard," 33 U.S.C. § 1365(a), and effluent standards are defined as "a permit or condition thereof ... which is in effect under this chapter." *Id.* § 1365(f)(6). *See Gwaltney,* 108 S.Ct. at 381 ("A citizen suit may be brought only for violation of a permit limitation 'which is in effect' under the Act"). As to its expired permit, which definitionally is not "in effect" at the commencement of the action, Carter–Wallace consequently maintains that § 1365 does not provide this

**2.** The only reported opinion thus far interpreting *Gwaltney, Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1522 (9th Cir.1987), sets a five-year statute of limitations on citizen suits. Such a holding would make little practical sense

without a recognition that pre-complaint violations, which would trigger the five-year limitation period, are properly the subject of penalties in citizen suits.

Court with subject-matter jurisdiction over penalty actions concerning violations of that permit.

To accept this argument would result in an impermissibly cramped view of the Clean Water Act's citizen suit provision, one which (as discussed *infra*) is not required by the language of the Act or the holding in *Gwaltney*. NPDES permits are designed by regulation to each be in effect for no more than five years. N.J.A.C. 7:14A–2.7(a), (c). Moreover, dischargers are able to renegotiate permits with "relative ease," such that they may acquire a new, slightly different permit to supercede their prior permit before the five year period expires. *Student Public Interest Research Group v. AT & T Bell Laboratories, Inc.*, 617 F.Supp. 1190, 1196 (D.N.J. 1985).

Carter–Wallace's construction of § 1365, then, would allow dischargers to effectively divide their obligation to abide by their permits into discrete periods of five years or less. If one permit was nearing its expiration date, and a new permit was about to be issued, a discharger could violate the expiring permit with little or no fear of incurring a citizen suit. This would be especially troublesome during the required one- to two-month period between the issuance date of a new permit and that permit's effective date, N.J.A.C. 7:14A–8.-6(b) (1984); during this time, the discharger could violate the expiring permit and be certain that no citizen group could sue while the old permit was still in effect, given the sixty-day notice requirement of the citizen suit provision. 33 U.S.C. § 1365(b). Indeed, the discharger could violate the expiring permit free of citizen suits even if, as is usually the case, the new permit merely adopts the conditions imposed by the expiring permit, so that the resulting discharges would violate permit conditions present in both the expiring permit and the current one.

To interpret the citizen suit provision to preclude penalty actions for all violations of an expired permit, including violations of permit conditions which have been carried forward into the new permit, would be contrary to the Act's overriding intent that citizens be able to enforce currently valid permit conditions when the federal and state governments have chosen not to do so.[3] It would similarly be contrary to this intent to conclude, as Carter–Wallace would have me conclude, that citizen suit jurisdiction is predicated upon the fortuity of whether a new permit superceded an expiring permit before or after a complaint was filed.

Finally, Carter–Wallace contends that it would be inequitable to hold a defendant liable for penalties in a citizen suit brought "to enforce the unsuitable terms of [a] superseded permit," and that *Gwaltney* saw such enforcement as an intrusion into "the primary enforcement domain of NJDEP and EPA." Brief in Support of Defendant's Motion for Partial Summary Judgment at 11. If enforcement of expired permits by citizen groups is limited to those conditions of the expired permit which are included in the superseding permit, then no inequity exists, for the discharger is simply being penalized for violating a currently existing permit condition. Moreover, it does not encroach upon the governmental enforcement mechanism for citizens to bring enforcement actions on the basis of discharges which violate both a condition in an expired permit and that same condition in a current permit. In such cases, the governmental authorities will have chosen not to enforce the identical effluent limitation over the course of two permits, thereby providing even greater reason why citizen groups should be allowed to enforce that limitation and impose penalties for all violations thereof.

Plaintiffs' interpretation of § 1365, allowing for citizen enforcement of an ex-

---

**3.** *See Gwaltney*, 108 S.Ct. at 384 (citizen suit provision of the Clean Water Act has the "central purpose of permitting citizens to abate pollution when the government cannot or will not command compliance"); S.Rep. No. 414, 92d Cong., 2d Sess. 81, *reprinted in* 2 Legislative History of the Water Pollution Control Act Amendments of 1972, at 1499 (1973) ("The Courts should recognize that in bringing legitimate actions under this section citizens would be performing a public service....").

pired permit so long as the same discharger is in violation of its current permit, must also be rejected. They argue that the statutory requirement that a permit condition "[be] in effect under this chapter" means simply that the permit must be "in effect" on the date of the violation, not on the date of the complaint. In other words, the argument goes, the language was inserted by Congress to specifically "exclude[ ] enforcement actions based on draft permits or permits which have been issued but are not yet effective." Plaintiffs' Brief in Opposition to Defendant's Motion at 15. It is somewhat difficult to believe that Congress would have felt it necessary to make explicit the obvious proposition that draft permits or permits which are not yet effective may not be enforced and that only effective permits and conditions thereof may be enforced. Moreover, had Congress intended to state the obvious, it could have employed far more precise language than it did.

Plaintiffs rely upon a number of pre-*Gwaltney* decisions in this district and, in particular, upon *AT & T Bell, supra,* which held that expired permits could be enforced in citizen suits. 617 F.Supp. at 1199. They recognize that one rationale of the *AT & T Bell* opinion—that jurisdiction in § 1365 citizen suits and in § 1319 government enforcement suits is identical—is no longer valid in the wake of *Gwaltney.* They contend, however, that the other rationale of *AT & T Bell* survives:

> that the government may seek civil penalties for violations of expired permits, that plaintiffs in citizen suits 'step into the shoes' of government agencies, and that, *once jurisdiction properly attaches,* the scope of liability in the two types of enforcement actions is therefore the same.

Plaintiffs' Brief at 17 (emphasis added). The observation that the citizen group and the government have equal enforcement powers once jurisdiction attaches may be a legally correct propostion, but it has scant relevance to a discussion of the proper scope of jurisdiction in a citizen suit.

Essential to such a discussion are the provisions of § 1365, for it is those provisions, as interpreted by *Gwaltney,* which limit citizen groups to seeking penalties "for violation[s] of a permit limitation 'which is in effect' under the Act." 108 S.Ct. at 381. The Supreme Court clearly intertwined, for citizen suits only, injunctive and penalty enforcement, such that penalties could be sought only on account of violations of permit conditions which could then be the subject of an injunction. *Id.* at 382. Plaintiffs' view of the statute would allow all conditions of an expired permit to be enforced through citizen penalty actions, even though the discharger could not be ordered to comply with those conditions of the expired permit which have no counterpart in the present permit. Plaintiffs' argument simply fails to keep injunctive and penalty relief joined, as *Gwaltney* requires.[4]

A third interpretation of § 1365—that citizen suits may seek to impose penalties solely for those conditions of an expired permit which have counterparts in the discharger's present permit—comports with the language of both *Gwaltney* and § 1365. *Gwaltney* holds, as noted, that only permit limitations which are currently in effect may be enforced by citizen penalty actions. Limitations of an expired permit, when those limitations have been transferred unchanged to the newly issued permit, may be viewed as currently in ef-

---

**4.** One could also read "condition" of a permit as referring not to the particular limitation of a given effluent, but to the effluent itself. On this reading, so long as the same effluent is controlled in the expired permit and in the current one, that effluent could properly be the subject of citizen suit penalties for all violations of both permits. However, as with plaintiffs' reading, this would allow a limitation contained in an expired permit to be enforced by a citizen suit penalty action even though that limitation could not be injunctively enforced. Moreover, the statutory language of § 1365—permit conditions are the equivalent of effluent standards or limitations—indicates that permit conditions refer to specific limitations on the discharge of particular effluents rather than to the effluents directly. This is also in keeping with the enforcement scheme of the Clean Water Act, which is geared in all respects to enforcement by government or by citizens of limitations measured as discrete levels of effluents.

fect. Because those limitations which span both an expired permit and a current one may properly be enforced by an injunctive order, and because *Gwaltney* holds that penalties may be sought only as to those limitations enforceable through injunctive relief, violations of a permit condition which continues from an expired permit into a current one may be enforced in a penalty action.[5]

This view is consistent with *Gwaltney*'s concern that injunctive relief and penalty remedies remain intertwined. The Court noted that § 1365 has the "central purpose of permitting citizens to abate pollution when the government cannot or will not command compliance." 108 S.Ct. at 384. A citizen suit to enforce through penalties a current limitation which has extended over two permits, where violations of that limitation went unchecked by government enforcement under either permit, fulfills the citizen enforcement role envisioned by the *Gwaltney* Court.[6] Only where government has refused to act may the citizen group enforce the limitation by seeking penalties. To construe the statute as Carter–Wallace suggests would allow dischar-

gers to escape liability imposed by citizen suits even where those dischargers presently violate the identical limitations which they violated in the expired permit. That unduly narrow interpretation is not required by *Gwaltney*.

Nor is that interpretation required by the language of the statute. Section 1365(f)(6) defines effluent standard as "a permit *or condition thereof* which is in effect" (emphasis added). I read that language as supporting the interpretation previously set forth: that conditions of an expired permit which are included in the current permit may be enforced by citizen groups as "a condition [of a permit] which is in effect."[7] As noted above, Carter–Wallace's narrower interpretation of the statutory language unduly restricts the important role of citizen enforcement actions and is not required by *Gwaltney*, while plaintiffs' broader reading ignores *Gwaltney*'s concern that injunctive and penalty relief go hand in hand.

■ Having determined the proper scope of citizen suits seeking to enforce conditions of expired permits, I need now only

5. While not at issue here, effluent limitations contained in an expired permit could also be enforced in citizen suit penalty actions when those limitations were made more stringent in the current permit. It would be anomalous, indeed, to hold that continuation of a permit condition unaltered does not immunize violations of an expired permit, while strengthening of a permit condition would insulate from suit all violations of the earlier, more lenient standard. Moreover, because the overarching purpose of the Clean Water Act is to eventually result in zero discharge, it would make sense that each succeeding permit should become stricter. To hold that the issuance of a new, stricter permit would result in less enforcement than would the issuance of an unchanged permit would unnecessarily set the enforcement provisions of the Act at odds with the limit-setting provisions, and create conflict where Congress clearly envisioned harmonious goals.

6. Carter–Wallace correctly relates the Supreme Court's observations that primary enforcement of the Clean Water Act rests with the government and that the government may institute a penalty action predicated solely on violations of an expired permit. *Gwaltney*, 108 S.Ct. at 383. It apparently argues that because the government has the power to remedy violations of expired permits, citizen suits to enforce those permits are unnecessary. However, where an

identical effluent condition has been violated over the course of two permits, without any government enforcement proceeding having been brought, it would be disingenuous to rely upon the government to impose penalties for violations of that effluent condition, as Carter–Wallace suggests. Once the government makes clear that it will not enforce a permit condition, citizen suits are intended to serve as the last bulwark against discharger violations.

7. This interpretation also resolves Carter–Wallace's Article III concerns. According to Carter–Wallace, a citizen bringing suit to enforce an expired permit would run afoul of Article III's standing requirement that a plaintiff show that his injury "is likely to be redressed by a favorable decision," *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), because penalties paid to the government (as they are in citizen suits) do not redress the citizen's asserted injury. When conditions of the expired permit are conditions of the present permit as well, and therefore are subject to injunctive relief as well as to penalties, the possibility of injunctive relief provides a remedy for the injury sufficient for Article III purposes.

apply the enunciated standard to the facts of this case. All twelve alleged violations of the 1975 Permit involve BOD and TSS, and Carter–Wallace has submitted evidence that the 1985 Permit imposes a quantitatively less stringent standard for those effluents than did the expired permit. While plaintiffs appear to take some issue with that contention, their admission that at least one violation of the 1975 Permit would not violate the 1985 Permit indicates that the latter permit is, indeed, more lenient as regards BOD and TSS. Moreover, plaintiffs have not submitted any evidence to support a contention that the BOD and TSS limitations of the 1975 and 1985 Permits are, in fact, identical.[8] For these reasons, I find that the BOD and TSS limitations of the 1975 Permit were not carried forward to the 1985 Permit and, thus, that no civil penalties may be imposed in this citizen suit regarding violations of those limits prior to May 1985.

In accordance with this opinion, Carter–Wallace's motion for partial summary judgment is granted as to alleged violations of the 1975 Permit, but denied as to alleged violations of the 1985 Permit predating the filing of the complaint in this action.

---

8. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (nonmoving party must present affirmative evi-

dence outside the pleadings in order to survive a summary judgment motion).