**NATURAL RESOURCES DEFENSE COUNCIL, INC. and Delaware Audubon Society, Plaintiffs,**

v.

**TEXACO REFINING AND MARKETING, INC., Defendant.**

**Civ. A. No. 88–263–JRR.**

United States District Court, D. Delaware.

Aug. 18, 1989.

Richard R. Cooch of Cooch & Taylor, Wilmington, Del., (James F. Simon, Nancy S. Marks and Nora J. Chorover of Natural Resources Defense Council, Inc., New York City, of counsel), for plaintiffs.

Richard D. Allen and Palmer L. Whisenant of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

ROTH, District Judge.

Plaintiffs Natural Resources Defense Council ("NRDC") and Delaware Audubon Society have brought this citizen suit under the Federal Water Pollution Control Act ("FWPCA" or "the Act"), 33 USC section 1251 *et seq.*, against Texaco Refining and Marketing, Inc., for alleged violations of a state-issued permit limiting effluent discharge from defendant's Delaware City oil refinery. Before the Court are the parties' cross-motions for summary judgment. For

the reasons stated below, plaintiffs' motion will be granted and defendant's motions will be denied.

## FINDINGS OF FACT

Defendant operates an oil refining plant along the Delaware River in Delaware City, Delaware. Since 1977, National Pollutant Discharge Elimination System ("NPDES") permit DE0000256 has authorized defendant to discharge limited quantities of 19 types of industrial liquid waste from its refinery into the Delaware River.[1]

Defendant's permit also imposes effluent limitations and monitoring requirements. It establishes seven discharge monitoring points at the refinery, originally numbered 001, 002, 101, 201, 301, 401 and 501. For each monitoring point, the permit specifies "parameters"—categories of pollutant—that are subject to defined effluent limits. The permit also requires defendant to test for each parameter at each monitoring point at designated intervals, using government-specified testing methods, and to report the results in monthly Discharge Monitoring Reports ("DMR's"). The contents of the DMR's then become public information.

Plaintiffs are non-profit environmental organizations that have among their membership persons who live near and use or enjoy the section of the Delaware River near defendant's refinery. By letter, dated March 8, 1988, plaintiffs notified the EPA, DNREC and defendant of their intention to file a citizen suit. Plaintiffs attached to their notification letter a list of 342 NPDES permit violations committed by defendant between January of 1983 and October of 1987. The information establishing these permit violations was obtained from information contained in defendant's DMR's.[2]

In November of 1988, defendant reached an agreement with the Saudi Arabian Oil Company ("SAOC") to form a joint venture partnership. The agreement became effective on December 31, 1988. The new partnership, Star Enterprise, acquired ownership of many of defendant's assets, including the Delaware City refinery. Defendant and SAOC each owns a 50 per cent interest in the joint venture's assets and each appoints half of the members of the joint venture's management committee.

On January 31, 1989, DNREC reissued NPDES permit DE0000256 for the Delaware City refinery, listing Star Enterprise as permittee.[3] When compared with the version of the permit which was in effect at the time the complaint was filed, the reissued permit contains changes in permissible effluent limits, in location of monitoring points and in the manner in which effluent limits are calculated.[4] There have been no

---

1. Defendant's permit was issued by the Delaware Department of Natural Resources and Environmental Control ("DNREC") on July 1, 1977, pursuant to the FWPCA, and was modified on March 10, 1981.

2. In their Complaint, filed on May 17, 1988, plaintiffs referred to DMR's which had subsequently been made available to them and which revealed an additional 12 violations, committed between December of 1987 and January of 1988, resulting in a total of 354 violations. During the course of the briefing on the motions for summary judgment, however, plaintiffs adjusted that figure to 344 violations by adding one more violation, found in a previously unavailable DMR, and dropping 11 violations, presumably in response to the statute of limitations argument contained in defendant's briefs. Because plaintiffs chose not to pursue their claims related to permit violations for which defendant alleges the statute of limitations has run, it is not necessary for the Court to decide whether those claims would have been time-barred.

3. The version of the permit in effect when the complaint was filed listed defendant as permittee.

4. The reissued permit contains the following changes: it eliminates discharge monitoring point 501 and the effluent limits associated with it; it creates a new discharge monitoring point 601 at the waste water treatment plant with different effluent limits for most of the parameters formerly monitored at discharge monitoring point 101; it changes the definition of daily average limit at discharge monitoring point 002 so that the limit applies only when the treated ballast water system is operated twice in a month or continuously for more than 24 hours in a month; it increases the daily average flow at outfall 201 to 398 million gallons per day from 334 million gallons per day; it moves discharge monitoring point 401 upstream from its prior location and limits it to a single parameter; it changes the monitoring requirements for discharge monitoring point 101 with only the requirements for two parameters, oil and grease, remaining.

reported violations of any of the terms of the reissued permit.[5]

On December 9, 1988, defendant filed a motion for partial summary judgment. One week later, plaintiffs filed a motion for summary judgment, seeking declaratory and injunctive relief and requesting a hearing to determine the appropriate amount of civil damages. On April 7, 1989, defendant filed a supplemental motion for partial summary judgment, alleging that developments which had occurred after the filing of the complaint—i.e., transfer of ownership and operation of defendant's refinery and reissuance of defendant's NPDES permit—had rendered plaintiffs' claims moot. The Court heard oral argument on the parties' motions on May 25, 1989.

## CONCLUSIONS OF LAW

### I. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The materiality of the facts disputed is determined by examining the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The genuineness of the dispute depends on whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id. See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden of persuasion when a motion for summary judgment is pending rests with the movant. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The movant must persuade the court that "even if all inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to [the non-movant], no reasonable jury could find in his favor." *Sorba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 202–203 (3d Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988).

It is the role of the trial judge deciding a motion for summary judgment to ascertain whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. In a typical civil case the judge's inquiry unavoidably asks whether "reasonable jurors could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict...." *Id.* at 252, 106 S.Ct. at 2512 (citation omitted).

### II. *Defendant's Motion For Summary Judgment*

In its original motion for partial summary judgment, defendant contends that the Court lacks jurisdiction to hear most of plaintiffs' claims. According to defendant, most of the claims in the complaint relate to wholly past permit violations and the FWPCA does not authorize the Court to grant relief for violations that are not ongoing at the time the complaint is filed. Defendant also argues that plaintiff NRDC lacks standing to sue in connection with many of the permit violations referred to in the complaint.

The FWPCA prohibits the discharge of any pollutant into navigable waters except as authorized by designated sections of the

---

**5.** After the motions for summary judgment had been fully briefed and argued before the Court, plaintiffs sent a letter, dated August 2, 1989, in which they alleged that Star Enterprise committed three violations of the reissued permit in June of 1989. Plaintiffs enclosed copies of Star's June DMR's, which showed three permit exceedances, and an accompanying cover letter sent by Star to the State of Delaware explaining the exceedances. Defendant replied by letter, dated August 11, 1989, in which it argued that the reported exceedances are not permit violations, relying on the defenses raised in its brief. We are of the opinion that the information in these letters does not materially affect the parties' positions in this case. As a result, the assertions made in these letters have played no part in our decision today.

Act. 33 USC § 1311(a). One such designated section establishes the NPDES. § 1342. Pursuant to the NPDES, the Administrator of the Environmental Protection Agency ("EPA") may issue permits authorizing the discharge of pollutants in accordance with specified conditions. § 1342(a). Alternatively, a state may adopt and administer its own permit program if the program conforms to federal guidelines and is approved by the Administrator. § 1342(b). If the state does so, the issuance of federal permits will be suspended. § 1342(c)(1).[6]

The holder of a federal NPDES permit is subject to enforcement actions by the Administrator of the EPA for failure to comply with permit conditions. § 1319. The holder of a state NPDES permit is subject to enforcement action by both the federal and state authorities for failure to comply. §§ 1319, 1342(b)(7). In the absence of a federal or state action to enforce, the Act authorizes interested citizens to file civil actions against a "person" allegedly violating the terms of a state or federal permit. § 1365(a).[7]

The citizen suit provision of the FWPCA provides, in relevant part, as follows:

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation.... The district courts shall have jurisdiction ... to enforce such an effluent standard or limitation ... and to apply any appropriate civil penalties under section 1319(d) of this title.

§ 1365(a).[8]

A party seeking to file a citizen suit under the FWPCA faces two jurisdictional hurdles. First, the Act itself requires that the party give notice of the alleged violation to the Administrator of the EPA, to the state in which the violation is allegedly occurring, and to the alleged violator at least sixty days before a complaint may be filed. § 1365(b)(1)(A).[9] Second, a citizen complaint must contain a good faith allegation that defendant's violations are continuing or intermittent—"that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc. and NRDC,* 484 U.S. 49, 108 S.Ct. 376, 381–82, 98 L.Ed.2d 306 (1987).

In *Gwaltney,* two environmental groups brought a citizen suit against the holder of an NPDES permit alleging that defendant had violated and would continue to violate permit conditions by exceeding effluent limits on certain pollutants. 611 F.Supp. 1542 (E.D.Va.1985). Defendant moved to dismiss for lack of subject matter jurisdiction under the FWPCA, arguing that it was not violating its permit at the time the complaint was filed. The District Court denied the motion, finding that the "words 'to be in violation' in the citizen suit provision could reasonably be read as comprehending unlawful conduct that occurred solely prior to the filing of the lawsuit as well as unlawful conduct that continues into the present." *Id.* at 1547. In the alternative, the court held, plaintiffs had satisfied the jurisdictional requirements of the citizen suit provision because their complaint alleged in good faith that Defendant was continuing to violate its NPDES permit at the time suit was filed. *Id.* at 1549, n. 8. The court ordered $1.3 million in civil penalties for violations committed before the filing of the complaint but denied the request for an injunction ordering defendant to conform to its permit. *Id.* at 1565.

The Court of Appeals for the Fourth Circuit affirmed, holding that the citizen

---

**6.** The State of Delaware received its NPDES delegation from the EPA on April 1, 1974.

**7.** 33 USC section 1362 provides that "[t]he term 'person' means an individual, corporation, partnership, association, state, municipality, commission, or political subdivision of a state, or any interstate body."

**8.** "Effluent standard or limitation," as applicable to this action, is defined as "a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter." § 1365(f)(6).

**9.** It is undisputed that plaintiffs complied with the FWPCA's notice requirement.

suit provision could be construed "to contemplate unlawful conduct that occurred only prior to the filing of a lawsuit as well as unlawful conduct that continues well into the present." *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 791 F.2d 304, 309 (4th Cir.1986). Although it observed that a "very sound argument can be made that plaintiffs' allegations of continuing violations were made in good faith," the Court of Appeals declined to rule on the District Court's alternative holding, reasoning that it was irrelevant to the outcome of the case. *Id.* at 308, n. 9.

By the time *Gwaltney* was before the Supreme Court, there was disagreement among the Circuits regarding the scope of federal subject-matter jurisdiction under the citizen suit provision of the FWPCA. The Fifth Circuit had held that "a complaint brought under section 1365 must allege a violation occurring at the time the complaint is filed." *Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392 (5th Cir.1985). That approach was expressly rejected in *Gwaltney* by both the District Court, 611 F.Supp. at 1550, and the Fourth Circuit, 791 F.2d at 309. After the Fourth Circuit had upheld the District Court's decision in *Gwaltney*, the First Circuit adopted a third approach, holding that "an action under 33 USC section 1365 may go forward if the citizen-plaintiff alleges a continuing likelihood that the defendant, if not enjoined, will proceed to violate the Act." *Pawtuxet Cove Marina, Inc. v. Ciba–Geigy Corp.*, 807 F.2d 1089, 1094 (1st Cir. 1986), *cert. denied*, 484 U.S. 975, 108 S.Ct. 484, 98 L.Ed.2d 483 (1987).[10] The Supreme Court stated that it had granted certiorari specifically "to resolve this three-way conflict in the Circuits." *Gwaltney* 108 S.Ct. at 381.

The Supreme Court reversed the Fourth Circuit, holding that an allegation that a permit-holder had violated the terms of its permit prior to the filing of a complaint did not confer subject-matter jurisdiction over a claim for such "wholly past" violations. *Gwaltney*, 791 F.2d at 309. The Court

instead adopted the standard found in the District Court's alternate holding and applied by the First Circuit in *Pawtuxet:* that the citizen suit provision "confers jurisdiction over citizen suits when the citizen-plaintiff makes a good faith allegation of continuous or intermittent violation...." 108 S.Ct. at 385. The Court remanded the case to the Fourth Circuit, instructing it to review the District Court's finding that the plaintiffs had made a good faith allegation of ongoing violations. *Id.* 108 S.Ct. at 386.

In the present case, both parties acknowledge the applicability of the *Gwaltney* decision, but they differ in their opinions of how the Court should determine if a permit violation is ongoing or wholly past. Defendant contends that plaintiff's Complaint must be examined on a parameter-by-parameter basis, that this court has jurisdiction over only those claims relating to parameters for which plaintiffs can in good faith allege continuing violations, and that summary judgment must therefore be granted in its favor on claims relating to all other parameters. More specifically, defendant argues that, of the nineteen parameters which its DMR's list as having been violated over the past six years, sixteen have been violated so sporadically or have not been violated for such a long time that plaintiffs cannot allege in good faith that violations of those parameters are ongoing. Defendant concludes that it is therefore entitled to summary judgment in its favor on all claims related to the alleged violations of those sixteen parameters.

In support of its position defendant cites a case decided before the Supreme Court's decision in *Gwaltney, Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1173 (5th Cir.), *cert. denied*, 484 U.S. 985, 108 S.Ct. 501, 98 L.Ed.2d 500 (1987), *reh'g denied*, —— U.S. ——, 108 S.Ct. 1065, 98 L.Ed.2d 1027, (1988), in which the Fifth Circuit held that "when determining whether a permit-holder has violated an effluent limitation, one must look at each parameter within each point source independently." In *Shell*, because examination of defendant's DMR's

---

**10.** The *Pawtuxet* court acknowledged that its construction of the Act was the same as that

employed in the alternate holding of the District Court in *Gwaltney.* 807 F.2d at 1094, n. 4.

revealed only "past, sporadic, or largely unconnected permit violations," the Fifth Circuit concluded that it had no jurisdiction over claims related to those violations and upheld the District Courts' grants of dismissal and summary judgment in the consolidated cases. *Id.*[11]

Plaintiffs urge the Court to reject defendant's parameter-by-parameter approach and instead apply a one-shot jurisdictional analysis to citizen suits. According to plaintiffs, jurisdiction under the FWPCA attaches to cases, not to specific violations, and thus they need not show a nexus between the charged permit violations. Put another way,

> [t]he FWPCA permits citizen suit actions against entities that are in violation of their permits, and it does not limit such actions to the particular types of violations that continue to occur.

*Sierra Club v. Port Townsend Paper Corp.*, No. C87–316C, slip op. at 5, 1988 WL 160580 (W.D.Wash. May 2, 1988). Furthermore, plaintiffs contend, an expedient juridictional analysis comports with Congress's desire that FWPCA enforcement actions entail a minimum of delay. *Cf. Chesapeake Bay Foundation and NRDC v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 452 (D.Md.1985).

■ We find plaintiffs' arguments persuasive. Nothing in the language of the FWPCA or the Supreme Court's opinion in *Gwaltney* supports the cumbersome jurisdictional analysis defendant insists is required. Instead, once a citizen suit has been properly commenced and subject-matter jurisdiction shown to lie, the court should be permitted to consider past, present, and potential future violations. *See Pub. Interest Research Group ("PIRG") v. Carter–Wallace, Inc.*, 684 F.Supp. 115, 119 (D.N.J.1988).

■ Defendant concedes that plaintiffs have shown ongoing violations of "several effluent limits of its NPDES permit." Defendant's Reply Br. at 1. Plaintiff has therefore met both jurisdictional requirements of the citizen suit provision of the FWPCA. The Court has subject matter jurisdiction over plaintiffs' claims relating to past, present and possible future permit violations.

■ Defendant's other argument in favor of its original motion for summary judgment is that, even if the Court has jurisdiction over plaintiffs' claims, plaintiff NRDC lacks standing to bring many of the claims in this citizen suit. According to defendant, the NRDC representatives who submitted affidavits along with the complaint were not NRDC members when many of defendant's permit violations occurred and their affidavits do not clearly state that they were concerned with the water quality of the Delaware River prior to 1985. Defendant cites *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972),[12] for the proposition that the NRDC can acquire no greater standing than that of the members upon which it relies and concludes that NRDC lacks standing to pursue claims relating to permit violations which occurred prior to 1985.[13]

Plaintiffs, on the other hand, direct the Court's attention to an FWPCA case, *Atlantic States Legal Foundation v. Al Tech Specialty Steel Corp.*, 635 F.Supp. 284

**11.** The *Shell* court, while acknowledging the split among the Circuits later remedied by the Supreme Court in *Gwaltney*, declined to abandon the jurisdictional test laid out in *Hamker* in favor of the First or Fourth Circuit approaches. *Id.* at 1175. The parties have dedicated a great deal of space in their briefs to the viability of *Hamker* and *Shell* since the Supreme Court decided *Gwaltney*. Rather than taking sides in this protracted debate, the Court has considered the parameter-by-parameter approach and declines to adopt it on its merits. *See infra* at p. 287.

**12.** In *Morton*, the Supreme Court held that a person has standing to seek judicial review under the Administrative Procedure Act only if he can show that he himself has suffered or will suffer injury, economic or otherwise. The Court found that, where the Sierra Club had asserted no individualized harm to itself or its members from federal officials approving an extensive skiing development in a national forest, the Sierra Club lacked standing to maintain the action.

**13.** It is undisputed that both plaintiffs have standing to sue for post–1985 permit violations.

(N.D.N.Y.1986). In *Atlantic States*, the plaintiff organization was permitted to pursue claims related to permit violations which had occurred before the organization was even formed. The court was persuaded in part by the fact that the organization had established standing to pursue claims related to later violations, as plaintiffs in the present case have, and in part by the cumulative nature of water pollution, stating:

> [f]urther, even if some of the alleged violations in the complaint did occur before the plaintiff organization was founded, it is still quite possible that the [river] was harmed to such an extent that the plaintiff's members were affected by the violations even though they occurred earlier. Certainly, some pollutants could have permanently affected the quality of the water....

*Id.* at 288–89.

We find that the conclusions drawn by the court in *Atlantic States* are more appropriate for determining standing to sue than are the requirements established in *Morton* for standing to sue under the Administrative Procedure Act. Therefore, rather than the approach to representational standing suggested by defendant, we will adopt the more pragmatic analysis of *Atlantic States*. Accordingly, we find that plaintiffs have standing to sue for permit violations committed before 1985. Defendant's motion for partial summary judgment will therefore be denied.

III. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs' summary judgment motion is based on what they refer to as the "determinative" nature of defendant's DMR's. Plaintiffs refer the Court to the legislative history of the FWPCA in support of their argument that allowing defendant to raise questions or defenses relating to its DMR's would run counter to one of the stated aims of Congress in enacting the NPDES:

> [T]he bill ... establishes and makes precise new requirements imposed on persons and subject to enforcement. One of the purposes of these requirements is to avoid the necessity of lengthy fact-finding investigations at the time of enforcement. Enforcement of violations of requirements of this Act should be based on relatively narrow fact situations requiring a minimum of discretionary decision-making or delay.

S.Rep. No. 414, 92d Cong., 1st Sess. 64, *reprinted in* 1972 U.S.Code Cong. & Ad. News 3668, 3730, *quoted in Student Pub. Interest Research Group of New Jersey ("SPIRG") v. Fritzsche, Dodge & Olcott,* 579 F.Supp. 1528, 1538–39 (D.N.J.1984), *aff'd* 759 F.2d 1131 (3d Cir.1985); *see also SPIRG v. Monsanto Co.,* 600 F.Supp. 1479, 1485 (D.N.J.1985) ("Summary judgment is appropriate on the issue of liability for violations of the Act.... particularly since NPDES enforcement actions are based on strict liability, thus making intent and good faith irrelevant to the issue of liability. (citations omitted).").

Defendant has raised three defenses to plaintiffs' allegations, specifically that its permit violations are the result of sampling errors, system upsets and statistical outliers. According to defendant, these defenses, which will be examined by the Court *seriatim,* combined with defendant's overall permit compliance rate of 95%, raise genuine issues as to material facts and thus preclude an award of summary judgment in plaintiffs' favor. For the reasons stated below, the Court disagrees.

■ Defendant attempts to raise a genuine issue as to material facts by arguing that many of the permit violations appearing in its DMR's are attributable to sampling errors. In support of its position, defendant has produced copies of documents submitted along with its DMR's identifying the errors in most of these violations. Furthermore, defendant argues that the erroneous measurements were only recorded in its DMR's because defendant's permit requires it.

Regardless of the credibility of the proof that defendant has submitted, defendant's sampling error defense conflicts with the legislative motivation behind the FWPCA. *See Connecticut Fund for the Environment, Inc. v. Upjohn Co.,* 660 F.Supp.

1397, 1417 (D.Conn.1987). "If an entity reports a pollution level in excess of the Permit limits, it is strictly liable, as Congress has manifested an intention that the courts not reconsider the effluent discharge levels reported." *Id.* Defendant's complaints regarding the accuracy of the government-imposed testing method contained in its permit should have been made during the period set aside for appeal of the permit's terms. It is, of course, too late for the defendant to do so now. The FWPCA clearly states that a permit "shall not be subject to judicial review in any civil or criminal proceeding for enforcement." 33 USC § 1369(b). We find, therefore, that defendant's arguments based on its permit terms raise no genuine issue as to any material fact.

■ Defendant next argues that summary judgment must be denied on all plaintiffs' claims relating to violations which it claims were caused by system upsets—exceptional, unintentional and temporary NPDES permit violations caused by factors beyond the permittee's control. 40 CFR § 122.41(n)(1). As defendant points out, such an upset may constitute an affirmative defense to a citizen suit for permit violations if properly recorded with timely notice to the proper authorities and proof that the defendant attempted to remedy the situation. § 122.41(n)(2). Defendant acknowledges that it has the burden of proof to show compliance with the conditions of the upset defense. § 122.41(n)(4).

Defendant's upset argument ignores the language of its NPDES permit, which makes no reference to the availability of such a defense. While the upset defense is provided in EPA regulations as a matter of federal law, those regulations authorize states to omit the upset defense from NPDES permits. 40 CFR §§ 122.41(n), 123.25(a). Section 122.41 provides that in order to be available to a permittee operating under a state-issued permit, the upset defense must be incorporated into the permit expressly or by reference to the relevant CFR sections. *See Sierra Club v. Union Oil of California,* 813 F.2d 1480, 1487 (9th Cir.1987).[14] Defendant's permit does not incorporate an upset defense in either manner. Exhibit E to Defendant's Opening Br. As a result, the upset defense is unavailable to defendant as a matter of law and thus cannot create a genuine issue of material fact.[15]

■ Defendant also contends that several of its permit violations are "statistical outliers" which should simply be overlooked by the Court. This last-ditch defense raises no issue as to any material fact. For reasons the Court finds persuasive, a similar argument was rejected by the Tenth Circuit in *American Petroleum Inst. v. EPA,* 540 F.2d 1023, 1036 (10th Cir.1976), which cautioned: "... we are unconvinced that refineries should be granted any specific number of days during the year when they may make excess discharges. The temptation to store pollutants for future discharge would be enticing."

In sum, defendant has presented no genuine issues as to any material fact which would preclude the Court from granting plaintiffs' motion for summary judgment on the issue of liability. Defendant's DMR's are practically unassailable evidence of liability. Moreover, summary judgment is uniquely appropriate in cases brought under the FWPCA. *Fritzsche,* 579 F.Supp. at 1538–39. Plaintiffs' motion for summary judgment will therefore be granted.

## IV. *Defendant's Supplemental Motion For Summary Judgment*

■ In support of its supplemental motion for partial summary judgment, defendant contends that reissued permit

---

**14.** Defendant cites *Marathon Oil Co. v. EPA,* 564 F.2d 1253, 1272–73 (9th Cir.1977), for the proposition that an upset provision is implicit in NPDES permits such as theirs. *Marathon Oil* is, however, inapposite, since the permits being reviewed in that case had been issued by the EPA, not a state agency.

**15.** Because the Court finds that defendant cannot avail itself of the upset defense, it is unnecessary to determine whether defendant met its burden to show compliance with the requirements for asserting the defense.

DE0000256 contains new terms which render moot plaintiffs' claims of continuous or intermittent violations of the earlier version of the permit, that an injunction issued against it would be unenforceable because it is not named as the permittee on the reissued permit, and that plaintiffs have not made a sufficient showing of irreparable harm to warrant injunctive relief. Plaintiffs, on the other hand, take the position that the changes in the reissued permit do not negate defendant's past violations and that defendant can be enjoined from violating the reissued permit. For the reasons stated below, the Court rejects both of these arguments and instead will adopt an intermediate position which better reflects the rationale behind the FWPCA: defendants will be enjoined from violating those terms of the reissued permit which were either carried over from the earlier version of the permit or were made more stringent.

It would appear that the FWPCA only authorizes the Court to grant injunctive relief based on a current permit, not an expired one. *See Carter–Wallace,* 684 F.Supp. at 119. Citizen suits may be maintained only when plaintiffs can allege that the discharger is "in violation of an effluent standard." 33 USC § 1365(a). Effluent standards are defined as "a permit or condition thereof ... which is in effect under this chapter." § 1365(f)(6). *See Carter–Wallace,* 684 F.Supp. at 119; *Gwaltney,* 108 S.Ct. at 381.

However, to disallow all suits based on violations of superceded permits, even where the succeeding permit contains identical terms, would permit a safe haven for dischargers whose permits were approaching expiration. *Carter–Wallace,* 684 F.Supp. at 120.[16] This scenario is especially troublesome in light of the fact that new, superceding permits can be obtained with relative ease. *Id., citing SPIRG v. AT & T Bell Laboratories, Inc.,* 617 F.Supp. 1190, 1196 (D.N.J.1985).[17] Consequently, where the limits contained in a superceded permit are incorporated into or made more strict in the new permit, there is no reason to allow a defendant to avoid enforcement of those limits.

In its memoranda submitted after oral argument defendant maintains that even if the Court were to enjoin it from committing further violations of the reissued NPDES permit, such an injunction would be unenforceable because defendant is no longer the permit holder and no longer has exclusive control over the refinery. According to defendant, the transfer of ownership and operation of the Delaware City refinery to Star Enterprise has rendered moot plaintiffs' claim for injunctive relief against defendant.

Defendant's argument that the FWPCA only authorizes injunctive relief against the currently named NPDES permit holder lacks merit. Nothing in the language of the Act indicates an intention to so limit the Court's power. On the contrary, the Act permits suits against anyone "alleged to be in violation" of an "effluent standard or limitation under this chapter...." 33 USC § 1365(a). District courts are specifically empowered "to enforce such an effluent standard or limitation." *Id.* In light of the fact that defendant was the permittee at

---

**16.** In the present case, for example, four violations committed as recently as December of 1988 at outfall 101 would constitute violations of the reissued permit but further violations at outfall 101 could not be enjoined under defendant's interpretation of FWPCA. Ex. A to Plaintiff's Supp. Reply Br.

**17.** In *Carter–Wallace,* plaintiffs brought a citizen suit pursuant to the FWCPA alleging 12 violations of defendant's 1975 permit and 31 violations of its superceding 1985 permit. Plaintiffs sought an order enjoining further discharges in violation of the 1985 permit and requiring defendant to pay civil penalties for violations of both permits. The court granted plaintiffs motion for summary judgment as to

violations of the 1985 permit which pre-dated the filing of the complaint but denied the motion as to violations of the 1975 permit. 617 F.Supp. at 117. After examining the language of the FWPCA and the Supreme Court's decision in *Gwaltney,* the *Carter–Wallace* court held that citizen plaintiffs could seek penalties for violations of expired permits only on the basis of those effluent limitations which were carried over into the superceding permit or were made stricter. *Id.* at 119, 122 n. 5. Fundamental to that holding was the court's observation that the FWPCA permits citizen suits for injunctive relief based on superceded permits subject to identical limitations. *Id.* at 119–22.

the time this suit was filed and is a 50 per cent partner in the joint venture which is the present permit holder, the Court is especially unwilling to narrow the purview of the citizen suit provision in the manner requested by defendant.

The Court interprets Fed.R.Civ.P. 65(d) to make an injunction issued against defendant enforceable against Star Enterprise, the present permit holder.[18] *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 180, 94 S.Ct. 414, 423, 38 L.Ed.2d 388 (1973); *Computer Searching Serv. Corp. v. Ryan,* 439 F.2d 6, 9 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 62, 30 L.Ed.2d 115 (1971). Because Star Enterprise now controls the Delaware City refinery, any permit violations committed in the future will necessarily entail participation by Star. And because it is a partnership, Star is charged with notice where notice of any matter relating to partnership affairs is served on defendant, a member of the partnership. 6 Del.C. § 1512.[19]

Defendant's argument to the contrary notwithstanding, the Court is not convinced that Rule 65(d) applies only to partners in sham transactions designed to avoid injunctive orders. Nothing in the language of the statute indicates that such a limitation was intended. Moreover, the case defendant cites in support of this proposition, *Herrlein v. Kanakis,* 526 F.2d 252, 254 (7th Cir.1975), in fact cites with approval cases such as *Golden State Bottling Co.,* which held that a successor in interest, acquiring with knowledge that the wrong remains unremedied, may be considered in privity with its predecessor for purposes of Rule 65(d). 414 U.S. at 180, 94 S.Ct. at 423. In *Golden State Bottling,* the Court was faced with a violation of an NLRB order. We find the same reasoning applicable to other federal statutory enforcement schemes, including the FWPCA, where the wrong which the successor knows has been committed constitutes a violation of that enforcement statute.

In the present case, Star was formed after commission of most of the permit violations which form the basis of this suit and after commencement of the suit itself. If the Court were to refuse to issue an injunction in the present case, our decision would have the effect of enabling a successor permit holder which had acquired the refinery with knowledge of ongoing violations to evade enforcement. This result would appear particularly inequitable where, as here, the successor is a joint venture in which the defendant is a partner.

Equally significant to the Court's decision on this issue is the fact that an injunction issued against defendant will in no way unfairly prejudice Star, which will be provided with notice of the injunction at the time it is issued. Star will be given an opportunity to be heard if and when a contempt proceeding to enforce the order becomes necessary. *See Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 15–16, 65 S.Ct. 478, 481–82, 89 L.Ed. 661 (1945). Moreover, if, as defendant contends, it will be able to comply with the reissued permit in the future, no contempt proceeding will be necessary.[20]

Finally, defendant contends that even if the Court were empowered to grant injunctive relief in the present case, such relief would be improper because plaintiffs have failed to make the necessary showing of imminent irreparable harm. Plaintiffs, on the other hand, take the position that traditional equitable principles need not be applied in this case because the FWPCA authorizes the Court to enjoin NPDES permit

---

**18.** Rule 65(d) provides, in relevant part, as follows:

> Every order granting an injunction and every restraining order ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

**19.** The rights and liabilities of partners are governed by the law of the forum state. *See, e.g., In re Special Grand Jury No. 1,* 465 F.Supp. 800, 805 (D.Md.1978).

**20.** In light of the Court's reliance on Rule 65(d), it is not necessary to rule on plaintiffs' contention that Delaware partnership law enables the Court to enjoin a partnership by issuing an injunction against a single partner.

**292**

violations on the basis of defendant's six-year pattern of non-compliance. Plaintiffs' position has ample support in this Circuit. For example, in *United States Postal Service v. Beamish*, 466 F.2d 804, 806 (3d Cir.1972), the Third Circuit held that a statute authorizing preliminary injunctive relief upon a showing of probable cause to believe that the statute is being violated can be considered a substitute for a finding of irreparable harm normally required for a preliminary injunction to issue. *See also Gov't of the Virgin Islands, Dep't of Conservation and Cultural Affairs v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 286 (3d Cir.1983). Consequently, based on the enabling language in the Act and the multiple violations contained in defendant's DMR's, injunctive relief is appropriate in this case. Defendant's supplementary motion for summary judgment is denied.

### CONCLUSION

For the reasons stated in this Opinion, on the issue of liability, plaintiffs' motion for summary judgment will be granted and defendant's motions will be denied. With regard to relief, defendant will be enjoined from violating those terms of current NPDES permit DE0000256 which were carried over from the version of the permit in force at the time the complaint was filed or were made stricter in the new version.

Plaintiffs have already submitted two proposed forms of order; however, neither of these proposed forms takes into account the Court's decision not to enjoin violations of terms of defendant's expired permit which were not carried over into the reissued permit in identical or stricter form. As a result, the parties are directed to formulate a new form of order implementing the Court's decision.