**MASSACHUSETTS PUBLIC INTEREST RESEARCH GROUP, Plaintiff,**

v.

**ICI AMERICAS INC., Defendant.**

**Civ. A. No. 89–1334–H.**

United States District Court,
D. Massachusetts.

Nov. 20, 1991.

Valerie J. Stoupis, Choate, Hall & Stewart, David A. Nicholas, Hale & Dorr, Charles C. Caldart, Public Interest Litigation, Boston, Mass., for plaintiff.

Gregory A. Bibler, John Kenneth Felter, Marie Lefton, David S. Mackey, Allan van Gestel, Gerard A. Caron, Goodwin, Proctor & Hoar, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case arises from a so-called "citizen suit" brought by the Plaintiff Massachusetts Public Interest Research Group ("MASSPIRG") against the Defendant ICI Americas, Inc. ("ICI"), for alleged violations of the Clean Water Act also known as the Federal Water Pollution Control Act ("FWPCA" or "Act"), 33 U.S.C. § 1251, *et seq.* The Defendant ICI operates a manufacturing facility in Dighton, Massachusetts, that produces dyes and other specialty chemicals. In accordance with a National Pollution Discharge Elimination System permit ("NPDES permit"), issued pursuant to Section 1342 of the Act, ICI discharges treated process wastewater as well as non-contact cooling water and stormwater run-off into the Muddy Cove Brook. This discharge then flows into the Taunton River.

ICI was issued its original NPDES permit in 1976 ("1976 Permit"). This permit set forth both flow and substance limits for ICI's discharged water.[1] In June of 1989, MASSPIRG, initiated a citizen suit, pursuant to Section 1365 of the Act, alleging, *inter alia*, that ICI was in violation of its 1976 Permit. In August of 1990, the United States Environmental Protection Agency ("EPA") and the Massachusetts Department of Environmental Protection ("DEP") issued a new NPDES permit to ICI ("1990 Permit"). The 1990 Permit relaxed the flow limits set forth in the 1976 Permit by increasing the volume of discharge allowed. It strengthened the previous substance limits, however, both by decreasing the levels previously allowed and by providing for new substances not accounted for in the 1976 Permit. The 1990 Permit became effective as of August 20, 1990. By its terms, the 1990 Permit supercedes all previous permits and the limits contained therein.

On December 4, 1990, MASSPIRG filed a Motion to Amend and an Amended Complaint which alleged additional violations of both the 1976 and 1990 Permits committed by ICI since the filing of the original Complaint. In March, 1991, the EPA and the DEP jointly brought an enforcement action and entered into a Consent Decree with ICI regarding violations of ICI's 1990 permit. *In the Matter of ICI Americas,* EPA Docket No. 91–17; DEP Docket No. 90–207. This Consent Decree became effective on March 20, 1991, and encompassed many of the violations cited by MASSPIRG in its Amended Complaint. The Consent Decree established interim compliance limits with June 4, 1992 set as the date for ICI to be in full compliance with its permit. In addition, the Consent Decree set forth a schedule of stipulated penalties to be paid by ICI should they fail to meet any of the established deadlines. On April 29, 1991, this

---

1. Flow limits refer to the volume of water that ICI may discharge into Muddy Cove Brook. Substance limits refer to the level of chemicals, minerals, etc., present in the discharge as well as the characteristics (e.g., toxicity) of the discharge water.

Court allowed MASSPIRG's Motion to Amend.

ICI has now filed a Motion for Partial Summary Judgment with respect to certain portions of Count II, relating to the NPDES permit violations. Specifically, ICI asserts that the issuance of the 1990 Permit has rendered moot MASSPIRG's claims for flow violations of the 1976 Permit.[2] Additionally, ICI states that because the EPA and DEP have taken enforcement action with respect to the substance violations under the 1990 permit, any claims brought by MASSPIRG are barred insofar as they relate to the same violations addressed by the EPA and DEP.

### I. *The Flow Violations*

ICI asserts that MASSPIRG's claims for flow violations are moot because they rely upon limits that have been relaxed in the 1990 Permit which, by its terms, supercedes any and all previous permits. While it acknowledges that it did violate the flow limits of the 1976 Permit, ICI points to the fact that, to date, there have been no flow violations of the 1990 Permit. In addition, ICI notes that only a handful of violations under the 1976 Permit would constitute violations under the more lenient standards of the 1990 Permit.[3]

In the landmark case of *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Supreme Court concluded that in order to maintain a citizen suit under Section 1365 of the FWPCA (Section 505 of the Clean Water Act), the citizen-plaintiffs must allege "a state of continuous or intermittent violation—that is a reasonable likelihood that a past polluter will continue to pollute in the future." *Id.* at 57, 108 S.Ct. at 381. In other words,

citizen suits for "wholly past violations" are not permitted under Section 1365 of the Act. *Id.* at 64, 108 S.Ct. at 384.

While the Court in *Gwaltney* was concerned primarily with the question of when a District Court had *jurisdiction* to hear a citizen suit under Section 1365, it also addressed the question of mootness, which is currently before this Court.[4] In *Gwaltney*, the petitioner raised a concern that citizen-plaintiffs could press a suit to conclusion despite the fact that, during the course of the litigation, the defendant would have come into compliance with the Act. *Gwaltney*, 484 U.S. at 66, 108 S.Ct. at 385. The Supreme Court reasoned that longstanding principles of mootness would prevent the maintenance of suit when "there is no reasonable expectation that the wrong will be repeated." *Id.* (Citations omitted).

The Supreme Court noted that a defendant seeking a dismissal on mootness grounds faces a heavy burden, and that it must be *"absolutely clear"* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* quoting *United States v. Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968) (emphasis added in *Gwaltney*). The Supreme Court concluded that the "[m]ootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations *wholly unconnected to any present or future wrongdoing*, while it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Id.* at 67, 108 S.Ct. at 386. (Emphasis supplied).

Since the decision of the Supreme Court in *Gwaltney*, there have been few cases regarding the issue of post-complaint mooting of claims under the FWPCA. The case

---

2. MASSPIRG has made no allegations of flow violations under the parameters of the 1990 Permit.

3. Between April, 1984 and August, 1987, there was a total of nine months during which the flow from ICI's plant would constitute violations of the 1990 Permit. Specifically, they were April, May and August of 1984; March and September of 1986; and April, May, July and

August of 1987. Since August of 1987, there have been no flows which would constitute violations of the 1990 Permit.

4. It is undisputed that ICI was in violation of its 1976 Permit regarding flow limits before, during and after the filing of this suit. Thus, there is no question regarding this Court's *jurisdiction* to hear this case.

most analogous to the one before this Court is *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.,* 719 F.Supp. 281 (D.Del.1989), *vacated and remanded on other grounds,* 906 F.2d 934 (3d Cir.1990). In *Texaco Refining,* the plaintiffs brought a citizen suit under the FWPCA seeking injunctive relief and civil penalties, for the defendant's violations of its NPDES Permit. After the complaint was filed, the defendant was reissued its permit for the site. The defendants then filed a supplemental motion for summary judgment based, *inter alia,* upon the fact that the reissuance of the permit, under which there had been no violations, rendered the plaintiffs claims for violations of the earlier permit moot.

The court weighed the fact that, in order to maintain a citizen suit, a discharger must be "in violation of an effluent standard," 33 U.S.C. § 1365, against the plaintiffs' concern that a defendant faced with such a suit would simply go out and obtain a reissuance of its permit. *Texaco Refining,* 719 F.Supp. at 290. The court concluded that, "where the limits contained in a superceded permit are *incorporated into* or *made more strict* in the new permit, there is no reason to allow the defendant to avoid enforcement of those limits." *Id.* (emphasis supplied); *see also Public Interest Research Group of New Jersey, Inc. v. Carter–Wallace, Inc.,* 684 F.Supp. 115, 123 (D.N.J.1988).

■ Following the logic of *Texaco Refining,* it would appear that where the relevant governmental authorities have *relaxed* the NPDES standards, a plaintiff's claims for violations of the superceded permit do indeed become moot. The key factor is that the terms in the new permit have been relaxed, not the issuance of a new permit in and of itself. Unlike the situations in which permit limits are carried over or even strengthened, the relaxation of permit limitations is, in effect, a state-ment by the government agencies that, to an extent, conduct that was impermissible before is now permissible.[5] Considering the Supreme Court's view that "the interest of the citizen-plaintiffs is primarily forward-looking" and that "the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." *Gwaltney,* 484 U.S. at 59, 108 S.Ct. at 382. It is logical that, in this limited circumstance, the plaintiffs claims for flow violations are rendered moot.

This Court feels that such an approach adequately protects the interests of potential plaintiffs under the FWPCA. This is not a situation in which the defendant is merely pleading "repentance and reform." *Gwaltney,* 484 U.S. at 67, 108 S.Ct. at 386. On the contrary, governmental relaxation of permit terms represents a change in circumstances from those in which the suit may have been originally brought. Furthermore, this Court is satisfied that a defendant, faced with a citizen suit under the FWPCA, would have substantial difficulty in obtaining a last-minute relaxation of its permit terms from the government agencies, so as to render such a scenario highly unlikely.

In examining the particular facts of this case, this Court concludes that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Gwaltney,* 484 U.S. at 67, 108 S.Ct. at 386. There have been no flow violations of the 1990 Permit for the fifteen months in which it has been in effect. The last recorded violation which would have constituted a violation of the 1990 Permit occurred in August of 1987, almost four and one-half years ago. Given these circumstances, this Court determines that MASSPIRG's claims for flow violations are moot under the standards articulated by the Supreme Court in *Gwaltney.*

This determination applies to *both* MASSPIRG's claims for civil penalties and

---

5. It was suggested in oral argument before this Court that relaxing the flow limits was done as some sort of trade-off for tightening the substance limits and that, in reality, this Court should view the 1990 Permit as being more restrictive than the 1976 Permit. This Court rejects such a view. The various limits contained in the permits are separate and distinct and this Court will treat them as such. Nor will this Court attempt to second-guess the EPA and DEP as to *why* they established the various limits that they did.

injunctive relief. The Supreme Court, when considering the issue of mootness in this context, made no distinction between claims for civil penalties and injunctive relief and this Court sees no reason to make such a distinction either. *See Gwaltney,* 484 U.S. at 66–67, 108 S.Ct. at 385–86. ("Mootness doctrine thus protects defendants from *the maintenance of suit* under the Clean Water Act …") (emphasis supplied). Thus, Defendant's Motion for Partial Summary Judgment as to Count II, relating to all claims for flow violations, is GRANTED.

### II. *The Substance Violations*

■ The second argument raised by ICI in its motion is that MASSPIRG's claims for substance violations under the 1990 Permit are barred insofar as they are the subject of a parallel government enforcement action. In support of its position, ICI directs this Court's attention to 33 U.S.C. § 1319(g)(6)(A) which provides in relevant part that any violation "(ii) with respect to which a State has commenced and is diligently prosecuting an action under a state law comparable to this subsection" shall not be the subject of a civil penalty action under the citizen suit provision of the FWPCA (33 U.S.C. § 1365).

ICI, however, ignores the very next subparagraph of this subsection which refers specifically to citizen suits. Subparagraph (B) provides that the limitations contained in subparagraph (A) on civil penalty actions brought under the citizen suit provisions of the FWPCA shall not apply with respect to any violation for which the citizen suit "has been filed *prior to* commencement of an action under this subsection." 33 U.S.C. § 1319(g)(6)(B) (emphasis added). In other words, if the citizen suit was filed before the DEP or EPA commenced action for the same violations, then there is no bar to the citizen suit.

In this case, MASSPIRG filed the Amended Complaint accompanied with a Motion to Amend on December 4, 1990. Despite the fact that the Motion to Amend was not allowed until April 29, 1991, for the purposes of this subsection, this Court deems the Amended Complaint to have been filed on December 4, 1990. *See Mayes v. AT & T Information Systems, Inc.,* 867 F.2d 1172–1173 (8th Cir.1989). The Consent Decree between the EPA, the DEP and ICI, which covered violations of ICI's 1990 Permit was entered into in March, 1991. Thus, MASSPIRG filed its action for violations of ICI's 1990 Permit prior to the commencement of any state or federal action for those same violations. By the plain terms of 33 U.S.C. § 1319(g)(6)(B), MASSPIRG's suit is not barred. *Cf. North and South Rivers Watershed Association, Inc. v. Town of Scituate,* 755 F.Supp. 484 (D.Mass.1991). (Action taken against the town by the DEP under Mass.Gen.L. ch. 21, § 44 was "comparable" to action taken under 33 U.S.C. § 1319(g)(6) so as to bar citizen suit which was filed *after* the commencement of governmental enforcement action.)

Therefore ICI's Motion for Partial Summary Judgment as to Count II relating to substance violations under the 1990 Permit that were subject to the March, 1991 Consent Decree is hereby DENIED.

SO ORDERED.