FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 31 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NATURAL RESOURCES DEFENSE
COUNCIL; SANTA MONICA
BAYKEEPER,

Plaintiffs-Appellants,

v.

COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY FLOOD CONTROL
DISTRICT; MICHAEL ANTONOVICH, in
his official capacity as Supervisor; DON
KNABE, in his official capacity as
Supervisor; HILDA L. SOLIS, in her
official capacity as Supervisor; MARK
RIDLEY-THOMAS, in his official capacity
as Supervisor; SHEILA KUEHL, in her
official capacity as Supervisor; GAIL
FARBER, in her official capacity as
Director of Los Angeles County
Department of Public Works,

Defendants-Appellees.

No.    15-55562

D.C. No.
2:08-cv-01467-BRO-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted October 13, 2016
Pasadena, California

Before: HARRY PREGERSON and MILAN D. SMITH, JR., Circuit Judges, and

H. RUSSEL HOLLAND,* Senior District Judge.

Opinion by Judge Milan D. Smith, Jr.

M. SMITH, Circuit Judge:

Plaintiffs-Appellants Natural Resources Defense Council and Santa Monica Baykeeper (collectively, the Plaintiffs) file this interlocutory appeal from the district court's dismissal of their claims for injunctive relief as moot. We hold that we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1), and that the Plaintiffs' claims for injunctive relief are not moot.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the Plaintiffs filed suit against the County of Los Angeles and the Los Angeles County Flood Control District (collectively, the County Defendants) alleging that the County Defendants were discharging polluted stormwater in violation of the terms of their National Pollutant Discharge Elimination System (NPDES) permit, issued pursuant to the Federal Water Pollution Control Act (the Clean Water Act), 86 Stat. 816, codified as amended at 33 U.S.C. §§ 1251, *et seq.* In 2013, we held that as a matter of law, the County Defendants had violated their permit because their monitoring stations recorded levels of pollution that exceeded the receiving water limitations in the 2001 Permit. *Nat. Res. Def. Council, Inc. v.*

---

* The Honorable H. Russel Holland, Senior United States District Judge for the District of Alaska, sitting by designation.

2

*Cnty. of Los Angeles*, 725 F.3d 1194, 1196–97 (9th Cir. 2013). We remanded the case to the district court for a remedies determination. *Id.* at 1197.

In 2012, during the pendency of appellate proceedings, the County Defendants sought and received a new NPDES permit from the Los Angeles Regional Water Quality Control Board (the Regional Board), which now governs the County Defendants' stormwater discharges. *Id.* at 1199 n.7. Both permits have substantially the same baseline receiving water limitations, which are the crux of the Plaintiffs' claims.

However, the 2012 Permit made significant changes concerning how the receiving water limitations requirement could be met. In the 2001 Permit, the prohibition against pollution exceedances was specific and straightforward: "[d]ischarges from the MS4 that cause or contribute to the violation of Water Quality Standards or water quality objectives are prohibited." If the pollution levels exceeded the limitations as detected by a relevant monitoring station, the permittees were in violation of the 2001 Permit. *Id.* at 1206–07.

The 2012 Permit is more complicated. First, the 2012 Permit establishes total maximum daily loads (TMDLs) for impaired water bodies. This is a measure of the maximum quantity of a pollutant that can be sustained by a water body that is already impaired, and it is used to calculate effluent limitations specific to the already-polluted area. The 2012 Permit contains interim requirements to ensure

3

that permittees are making progress toward achieving water quality standards in those areas, as well as final deadlines for permittees to actually meet TMDL targets. Failing to meet an interim or final TMDL requirement is a violation of the permit. Conversely, if a permittee meets the TMDL standards, it is deemed to be in compliance with baseline receiving water limitations. The 2012 Permit has thirty-three TMDLs for different bodies of water and pollutants. Where no TMDL is assigned to a certain body of water, the baseline receiving water limitations apply.

Second, the 2012 Permit creates a safe harbor program for permittees that initiate, develop, revise, and implement a voluntary watershed management program (WMP) or enhanced watershed management program (EWMP). If a permittee initiates a WMP and timely meets the requirements of the program, the permittee is deemed to be in compliance with both baseline receiving water limitations (where there is no overriding TMDL requirement) and interim TMDL requirements, but must still meet final TMDL requirements. If a permittee successfully completes an EWMP, it is exempt from all receiving water limitations and TMDL requirements, including the final deadlines. The "deemed compliance" begins as soon as a permittee "[p]rovides timely notice of its intent to develop a WMP or EWMP." This declaration of intent triggers a schedule requiring the permittee to keep up with implementation requirements and deadlines. But this

4

safe harbor is not guaranteed to last. "If a [p]ermittee fails to meet any requirement or date for its achievement in an approved [WMP] or EWMP," the permittee shall be immediately subject to the receiving water limitations for the waterbody at issue.

The County Defendants have initiated a total of seven WMPs and twenty-three EWMPs, covering all the watershed areas for which they have responsibility. After declaring their intent to develop their WMPs and EWMPs, the County Defendants submitted their initial plans to the Regional Board in June 2014. The Regional Board returned "Comments and Necessary Revisions" to the WMP drafts in October 2014. The County Defendants submitted revised drafts in January 2015, and the Board returned "conditional approvals" of the drafts in April 2015, requiring the permittees to make additional revisions. The County Defendants ultimately obtained final approval for at least three WMPs.

As for the EWMPs, work plans were submitted in June 2014, and initial drafts were due in June 2015. The County Defendants obtained final approval from the Regional Board for at least one EWMP.

But even with the approved WMPs and EWMPs, the permittees must actually comply with the requirements in those plans, and the Regional Board will review the implementation efforts every two years thereafter. Implementing WMPs will require "new programs and new construction that address water quality

5

on a watershed basis[,]" and implementing EWMPs will require "construction of large-scale regional projects. . . ." At this point in time, the record does not reflect whether the County Defendants have taken any actual steps to implement the requirements of the WMPs or EWMPs. The County Defendants concede that compliance is voluntary, and that the WMPs and EMPs will "require substantial new resources and time for implementation."

In January 2015, the County Defendants filed a motion to dismiss the Plaintiffs' entire lawsuit on mootness grounds, arguing that the 2012 Permit supplanted the 2001 Permit and therefore relief was not available to the Plaintiffs. The district court denied the motion with regard to the claims for civil penalties for past violations. However, the district court granted the motion with regard to injunctive relief, on the basis that the County Defendants were currently in compliance with the 2012 Permit, combined with the fact that "the Court has been provided with no evidence that Defendants will not comply to the fullest extent." The district court noted that the County Defendants' recently-submitted revised plans in response to the Regional Board's comments on the initial draft "suggest[] (even if [they do] not establish) a commitment to compliance more than a likelihood of falling out of compliance." On this basis, the district court concluded that "it is absolutely clear that Defendants cannot reasonably be expected to fall out of compliance," and "[a]s a result, the Court finds Plaintiffs' remaining claims for

6

injunctive relief to be moot." On April 14, 2015, the Plaintiffs filed a timely interlocutory appeal of the district court's dismissal of injunctive relief.

## ANALYSIS

### I. **Jurisdiction**

As a threshold matter, we must determine whether jurisdiction exists over this appeal. "As a general rule, appellate jurisdiction is limited to 'final decisions of the district courts of the United States.'" *In re Lorillard Tobacco Co.*, 370 F.3d 982, 983 (9th Cir. 2004) (quoting 28 U.S.C. § 1291). But pursuant to 28 U.S.C. § 1292(a)(1), we have appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions[.]" The Plaintiffs filed this interlocutory appeal of the district court's order as one "refusing . . .[an] injunction[]" under 28 U.S.C. § 1292(a)(1). The County Defendants argue that the district court's order was not a denial of an injunction on its face, but only had the "practical effect" of denying an injunction. The County Defendants maintain that under the test in *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), the Plaintiffs cannot show the irreparable harm necessary to make the district court's order immediately appealable.

In *Shee Atika v. Sealaska Corp*, 39 F.3d 247 (9th Cir. 1994), we held that when a district court "specifically denie[s] [a] request for an injunction," the

"appeal . . . falls squarely within the language of section 1292(a)(1)." *Id.* at 248. In contrast, we noted that when an order only has the "'practical effect' of denying an injunction," *Carson* requires "that the would-be appellant show[] that the order 'might have a serious, perhaps irreparable consequence'" in order to invoke jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). *Id.* at 249 (quoting *Carson*, 450 U.S. at 84). However, we clarified that *Carson*'s "requirement of irreparable injury" does not apply to "appeals from the direct denial of a request for an injunction." *Id.*

A straightforward application of *Shee Atika* compels the conclusion that we have jurisdiction over the Plaintiffs' interlocutory appeal. The district court expressly stated that it was eliminating the claims for injunctive relief: "Defendants' motion to dismiss is GRANTED in part and DENIED in part on the basis that Plaintiffs' claims for injunctive relief are moot, but the Plaintiffs' claims for monetary civil penalties remain active[.]" The Plaintiffs' interlocutory appeal therefore "falls squarely within the language of section 1292(a)(1)," and *Carson*'s additional requirement of irreparable injury does not apply. *Shee Atika*, 39 F.3d at 248–49.

Our conclusion that the district court's dismissal of the claims for injunctive relief on the basis of mootness confers jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) is consistent with the persuasive reasoning of a sister-circuit case,

8

*Holmes v. Fisher*, 854 F.2d 229 (7th Cir. 1988). In *Holmes*, the plaintiff brought a § 1983 claim after being detained by police for eight days before his probable cause and bail hearings, and sought both injunctive relief and damages. *Id.* at 230. The district court dismissed the injunction case as moot, on the ground that Holmes had since been arraigned and there was no reasonable prospect that he would again be subject to prolonged detention. *Id.* The Seventh Circuit held that the order was immediately appealable because the district court had "stripped the case of its equitable component," and "[t]his denies the request for an injunction, activating the right to seek interlocutory review under 28 U.S.C. § 1292(a)(1)." *Id.* Because the plaintiff had "suffered total defeat on his request for an injunction," the Seventh Circuit held that "§ 1292(a)(1) allows him an immediate appeal." *Id.* at 231. The *Holmes* court specified that "a conclusive denial of all equitable relief is appealable *even though a request for damages lives on.*" *Id.* at 230 (emphasis added).

The district court's order is indistinguishable from the order in *Holmes*. The district court's mootness determination conclusively denied the Plaintiffs all chance of an injunction, directly "stripp[ing] the case of its equitable component." *Id.* Accordingly, the Plaintiffs' interlocutory appeal falls directly under 28 U.S.C. § 1292(a)(1), and we therefore have jurisdiction in this appeal.

9

## II. Mootness

### a. Standard of Review

A district court's mootness determination is reviewed *de novo*, while the underlying factual determinations are reviewed for clear error. *Rosebrock v. Mathis*, 745 F.3d 963, 970 n.8 (9th Cir. 2014).

### b. Application

The Plaintiffs' claims for injunctive relief are not moot because the County Defendants are still subject to receiving water limitations, which are substantially the same as the limitations in the 2001 Permit. Although the County Defendants are significantly less *likely* to violate those limitations under the 2012 Permit, because of the delay and partial exemption afforded by the safe harbor of WMPs and EWMPs, it is not "absolutely clear" that their violations will not recur.

"In seeking to have a case dismissed as moot . . . the defendant's burden is a heavy one." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (citation omitted). "The defendant must demonstrate that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (emphasis and internal quotation marks omitted). The County Defendants defend the district court's mootness determination on two grounds. First, they argue that the 2012 Permit superseded the 2001 Permit by drastically changing compliance requirements. Second, they argue that the

evidence of their current compliance with the 2012 Permit is undisputed.

### 1.  The Permits

A new permit, in and of itself, does not moot a case for injunctive relief.  *See Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 236 F.3d 985, 992, 1002 (9th Cir. 2000) (upholding injunctive relief on the basis of three stormwater permits issued during the pendency of the litigation where the provisions at issue remained consistent across the permits); *see also Nat. Res. Def. Council, Inc. v. Texaco Ref & Mktg., Inc.*, 719 F. Supp. 281, 290 (D. Del. 1989) ("[W]here the limits contained in a superceded permit are incorporated into or made more strict in the new permit, there is no reason to allow a defendant to avoid enforcement of those limits."), *vacated on other grounds*, 906 F.2d 934 (3d Cir. 1990).  The relevant inquiry is whether the 2012 Permit maintains the receiving water limitations from the 2001 Permit such that an injunction could still provide effective relief.  *Jerron West, Inc. v. Cal. State Bd. of Equalization*, 129 F.3d 1334, 1336 (9th Cir. 1997) (holding that in a mootness inquiry, "[t]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available . . . [but] whether there can be any effective relief." (quotation marks omitted)); *Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993) ("The basic question is whether there exists a present controversy to which effective relief can be granted." (quotation marks omitted)).

11

Given the purpose of the mootness inquiry, the district court was in error when it broadly stated that if the standards of an NPDES permit are relaxed, "a plaintiff's claims for violations of the superceded permit do indeed become moot." Other than this broad language from *Massachusetts Public Interest Research Group. v. ICI Americas. Inc.*, 777 F. Supp. 1032, 1035 (D. Mass 1991), neither the County Defendants nor the district court has cited authority for this proposition. It may be that if the standards of the permit are relaxed to such an extent that injunctive relief would no longer be effective (in other words, the activity is no longer a violation), the case is moot. But it is not the law that any relaxation of NPDES permit standards, no matter how *de minimis*, necessarily moots the case.

Viewed through this lens, both the facts and law of *Massachusetts Public* are distinguishable. In that case, the defendants had continuously violated the flow limitations of a 1976 permit, but were issued a new permit in 1990. *Id.* at 1034. Under the more lenient standards of the 1990 Permit, no flow violations had been detected for over four and a half years, and even over the entire life of the 1976 Permit, "only a handful of violations" would have violated the new permit. *Id.* In short, the new standards had been relaxed to such an extent that in essence, "conduct that was impermissible before is now permissible." *Id.* at 1035.

The 2012 Permit substantially retains the baseline receiving water limitations from the 2001 Permit. However, impermissible violations of the 2001

12

Permit are now permissible under the 2012 Permit, but only if the County Defendants qualify for the safe harbor program by "keep[ing] up with all requirements and deadlines" for the WMPs and EWMPs. Whether or not their actions are enjoinable violations of the 2012 Permit depends on their continuing to voluntarily participate in (and meet the requirements of) the WMP and EWMP process. Because compliance is conditional on the success of these programs, the County Defendants bear the burden of demonstrating that it is "absolutely clear" the violations will not recur, either through the use of the safe harbor of the WMPs and EWMPs or through actual pollution reduction measures.

### 2. Likelihood of Future Violations

The County Defendants' theory of mootness based on current compliance with the 2012 Permit is best described as "voluntary cessation" of illegal activity. "[M]ere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000)).

Under this standard, the district court also erred in dismissing the Plaintiffs' injunctive claims. Although it cited the appropriate legal standard from *Gwaltney*,

13

which requires a defendant to demonstrate that it is "absolutely clear" that no violations will recur, the district court applied a preponderance of the evidence standard and impermissibly shifted the evidentiary burden to the Plaintiffs. Furthermore, the district court's factual determination that "Defendants cannot reasonably be expected to fall out of compliance" is not based on evidence in the record, and is therefore clearly erroneous.

First, the district court erroneously implied that the Plaintiffs bore the burden of proof. After finding that the County Defendants were committed to compliance, the district court stated that "the Court has been provided with no evidence that Defendants will not comply to the fullest extent." Such analysis "impermissibly attempts to shift the burden to [the Plaintiffs] to defeat mootness[,]" when it is the Defendants "that bear[] the 'heavy burden' in this case." *Rosemere*, 581 F.3d at 1173 (quoting *Laidlaw*, 528 U.S. at 189). A defendant "cannot meet this burden solely by claiming that [the Plaintiff] has not done enough to show the likelihood of further [violations]." *Id*.

Second, the district court's order did not cite any positive evidence that the County Defendants would not violate the receiving water limitations in the future. Instead, the district court found that "[the] Defendants are currently deemed to be in compliance with the 2012 Permit at least based on their participation in WMP and EWMP work plans." But *Gwaltney* makes clear that the relevant consideration

14

is the likelihood of future violations, not current cessation. 484 U.S. at 66–67. As to this point, the district court reasoned that because the "Defendants at least revised their programs in response to the Regional Board's comments and revisions," this "suggests (even if it does not establish) a commitment to compliance more than a likelihood of falling out of compliance." Under *Gwaltney*, the County Defendants must present evidence to show that there is "no reasonable expectation that the wrong will be repeated," and that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," 484 U.S. at 66 (emphasis and quotation marks omitted), not just "more likely than not." In other words, they must actually establish, not merely suggest, that they will be in compliance into the future. This heavy burden "protects plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform." *Id.* at 67 (quotation marks omitted).

The County Defendants cannot satisfy this heavy burden in light of the potential invalidation of the 2012 Permit's safe harbor program. The County Defendants' evidence of current and future compliance with the 2012 Permit consists of their continuing compliance with their WMPs and EWMPs; in other words, the County Defendants' compliance with the 2012 Permit is dependent on the safe harbor program. However, the Plaintiffs have filed a writ of mandate in California Superior Court, alleging that the safe harbor program of the 2012 Permit

15

violates the anti-backsliding provision of the Clean Water Act. The anti-backsliding provision of the Clean Water Act prohibits permits from being "renewed, reissued, or modified . . . to contain effluent limitations which are less stringent than the comparable effluent limitations in the previous permit." 33 U.S.C. § 1342(o)(1)[1]; *see also* 40 C.F.R. § 122.44(l) (EPA regulation imposing identical restrictions). The Plaintiffs allege that the 2012 Permit is "less stringent" than the 2001 Permit because the safe harbor provision "excuse[s] violations . . . as long as permitees are developing or implementing WMPs or EWMPs," whereas the 2001 Permit "imposed an absolute prohibition on discharges. . . ." In contrast, the County Defendants argue that the 2012 Permit's terms are no less stringent, as the effluent limitations remain the same. As such, the safe harbor provision merely provides a system whereby the County Defendants can gradually move toward compliance. Whatever the merits of this dispute, the Plaintiffs' legal challenge to the safe harbor provision creates a significant possibility that County Defendants will be forced to demonstrate strict compliance with the baseline receiving water limitations.

But even if the safe harbor program is upheld, the County Defendants still must actually implement the complicated and expensive watershed management

---

[1] The Clean Water Act provides for three exceptions to its general prohibition on backsliding. 33 U.S.C. § 1342(o)(2). However, the County Defendants conceded at oral argument that none apply to the 2012 Permit.

16

plans. The Plaintiffs have cited to evidence in the record suggesting that the success of the WMPs and EWMPs is not likely. For example, the Lower Los Angeles River Watershed Group, of which the District is a part, stated in a publication that "[f]inancing the implementation of the Lower LAR WMP is the greatest challenge confronting the Watershed Group. In the absence of stormwater utility fees, the Participating Agencies [including the District] have no dedicated revenue stream to pay for implementation of the WMP." Until the County Defendants have finished the process of financing and implementing the WMPs, there is a significant likelihood that they will be subject to and violate the baseline receiving water limitations. Initiation of a reform process cannot, standing alone, make it "absolutely clear" that the reformation will last.

Even with the substantial changes of the WMPs and EWMPs in the 2012 Permit, the baseline receiving water limitations may still apply, and thus it is still possible for the district court to award effective injunctive relief to the Plaintiffs. The County Defendants have not met their burden of making it "absolutely clear" that no violation will recur in the future. Accordingly, the Plaintiffs' injunctive claims are not moot.

## CONCLUSION

For the foregoing reasons, the district court's dismissal of the Plaintiffs' claims for injunctive relief as moot is REVERSED.

17

No petition for rehearing will be entertained and the mandate shall issue forthwith. *See* Fed. R. App. P. 2.