**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos.   NC-17-1336-FBKu |
| | NC-17-1354-FBKu |
| THOMAS RICHARD McINNIS, | (Consolidated) |
| Debtor. | Bk. No.   17-52291 |
| THOMAS RICHARD McINNIS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| SANTA CRUZ COUNTY TAX COLLECTOR; SELECT PORTFOLIO SERVICING, INC., | |
| Appellees. | |

Argued and Submitted on November 29, 2018
at San Francisco, California

Filed – December 10, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

_____

Appearances:  Appellant Thomas Richard McInnis, pro se, on brief;
Jessica Claudine Espinoza argued for appellee Santa Cruz
County Tax Collector.

_____

Before: FARIS, BRAND, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Thomas Richard McInnis appeals from the bankruptcy court's orders denying an extension of time to file his schedules, denying an extension or imposition of the automatic stay, and dismissing his case with a two-year bar on refiling. He argues that the bankruptcy court failed to consider his emotional, physical, and financial condition when it dismissed his case – his twelfth bankruptcy case since 2008 and his fourth case within a year. Despite his extensive history of failed bankruptcy cases, he claims that he is now ready and willing to complete the bankruptcy process. The bankruptcy court did not err when it refused to credit this assertion.

We AFFIRM.

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND[2]

### A.    Mr. McInnis' history of bankruptcy filings

Since 2008, Mr. McInnis has filed twelve bankruptcy petitions, all of which were dismissed. Including the present case, his five most recent cases were dismissed for failure to file required documents.

Mr. McInnis claims that his string of bankruptcy filings was due to the economic recession and a conspiracy against him perpetrated by the local government. Prior to July 2015, he filed seven bankruptcy petitions, which he claims "were due to the great recession[.]" Then, he was arrested in July 2015 on unspecified criminal felony charges, and he explains that "all of my [subsequent] bankruptcies were due to the county trying to steal my lots without legal notification[,]" perhaps as "political retribution" for an unsuccessful campaign for county supervisor. He represented that the criminal charges were dismissed by the district attorney in January 2018,[3] but that he has had to travel between California and Nevada to care for his ailing father. He claims that the multiple bankruptcy filings were necessary "to save my real property from a fire sale by virtue of an unnecessary foreclosure or illegal tax seizure of my real property."

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] Based on Mr. McInnis' motion to continue oral argument in this appeal, it appears that the criminal charges are still pending.

## B.    Mr. McInnis' tax-defaulted properties

Mr. McInnis owns two empty lots in Aptos, California (the "Subject Lots"). According to appellee Santa Cruz County Tax Collector (the "County"), Mr. McInnis has not paid any property taxes on the Subject Lots since 2007. The Subject Lots were declared tax-defaulted[4] in July 2007.

In 2011, the County obtained the power to sell the Subject Lots and scheduled the properties for auction in 2014. The County represented that it attempted to sell the Subject Lots four times since 2014, but each time, Mr. McInnis filed a bankruptcy petition to hinder or delay the sale.

The most recent sale was scheduled for September 22, 2017. The County notified Mr. McInnis that the Santa Clara County Board of Supervisors would purchase the Subject Lots unless he redeemed the properties by 5:00 pm on that date.[5] At that time, he owed a combined total of approximately $100,000 in delinquent property taxes on the Subject Lots.

## C.    The present bankruptcy case

Mr. McInnis filed a skeletal chapter 13 bankruptcy petition two days

---

[4] Section 126 of the California Revenue and Tax Code defines "tax-defaulted property" as "real property which is subject to a lien for taxes which, by operation of law and by declaration of the tax collector, are in default and from which the lien of the taxes for which it was declared tax-defaulted has not been removed." Cal. Rev. & Tax. Code § 126.

[5] The amount necessary to redeem property is the sum of "(a) The total amount of all prior year defaulted taxes[;] (b) Delinquent penalties and costs[;] (c) Redemption penalties[; and] (d) A redemption fee . . . ." Cal. Rev. & Tax. Code § 4102.

before the scheduled sale of the Subject Lots.[6] It was his fourth bankruptcy filing within the past year. He did not file his schedules, statement of financial affairs, statement of current monthly income, calculation of disposable income, or chapter 13 plan. The bankruptcy court ordered him to file those documents within fourteen days or risk dismissal.

**D.     The motion to impose or extend the automatic stay**

On September 22, 2017, Mr. McInnis filed a motion to impose or extend the automatic stay ("Motion to Impose Stay"). He explained, "I have filed several bankruptcies in the past year but I was unable to complete the process because I was busy working and caring for my ailing father, so the automatic stay . . . might not go into place." He further stated that his most recent petition "was prepared and filed in an expedited manner to stop a last minute unnecessary foreclosure sale of his home on September 20, 2017 and an illegal tax sale of the debtor's empty lots scheduled on or after September 22, 2017."

Mr. McInnis explained that his father had various health problems and only recently moved to California, where Mr. McInnis could better care for him. He stated that his father would live in an RV on the Subject Lots and contribute toward the payment of back taxes. He promised that he

---

[6] In apparent anticipation of the sale, Mr. McInnis transferred a ten percent interest in the Subject Lots, without consideration, to Tami Lee Davis on September 7, 2017. Ms. Davis also filed a chapter 13 petition on the same day as Mr. McInnis.

would "complete [his] schedules and get them filed with the court on time . . . ."

The County filed an opposition to the Motion to Impose Stay and asked the bankruptcy court to confirm that the automatic stay was not in effect under § 362(c)(4)(A)(I) because Mr. McInnis had more than two bankruptcy cases dismissed within the previous year. The County also requested that the court decline to impose the automatic stay because Mr. McInnis did not file his petition in good faith.

**E.    The motion to extend the filing deadline**

While the Motion to Impose Stay was pending, Mr. McInnis filed a motion requesting a forty-five day extension of time to file his schedules and other documents ("Motion to Extend Deadline"). He stated that he was working and caring for his father so "was unable to gather all the necessary documents for completing the chapter 13 schedules, statement of affairs, plan, and other information and documents . . . when the petition was filed."

Two days later, the bankruptcy court denied the Motion to Extend Deadline ("Deadline Extension Order"). It stated that, "[g]iven Debtor's numerous bankruptcy case filings, the court does not find that Debtor's reason for extension of time is credible . . . ." It noted that Mr. McInnis had filed eleven other cases and had "failed to disclose all prior cases on his voluntary petition."

The bankruptcy court also issued an order ("OSC") for Mr. McInnis to appear and show cause why the court should not dismiss his case with a two-year bar on refiling.

## F.     Hearing on the OSC and Motion to Impose Stay

The bankruptcy court held a hearing on the OSC and the Motion to Impose Stay.[7] Mr. McInnis repeated his arguments in his filings: that the recession had hurt his finances and that he had struggled to care for his father. However, he stated, "I would love the opportunity to go through this process with the Bankruptcy Court because I now have my dad's medical issues under control."

The bankruptcy court first addressed the OSC. It told Mr. McInnis

---

[7] Just before the hearing, Mr. McInnis filed a declaration with exhibits in support of the Motion to Impose Stay and Motion to Extend Deadline (even though the latter had already been denied). He argued that the County's sale of the Subject Lots was improper and that the County Board of Supervisors was attempting to acquire the Subject Lots at a "fire sale," rather than pay the fair market value.

He "apologize[d] for all [his] past bankruptcy filings," but explained that he did so "in an emergency to protect [his] asset from being stolen for 20 cents on the dollar." He said that his father agreed to sell his residence in Nevada and loan Mr. McInnis $97,000 to pay the delinquent property taxes, but only if the bankruptcy court imposed a stay for sixty days.

At the hearing, the bankruptcy court acknowledged that it had reviewed the declaration and exhibits and stated that they were essentially "duplicative of what was included in the original motion to extend time, which is an explanation for the repeated filings and the sort of personal challenge that Mr. McInnis has faced. So I don't think there's anything new in it."

that his case was "probably the worst case of abuse of the bankruptcy system that I've seen in quite some time that doesn't involve just flat out people lying on their schedules." It noted that Mr. McInnis had filed at least eleven bankruptcy cases and that "none of them have gone anywhere." Additionally, many of the previous cases were dismissed for Mr. McInnis' failure to file schedules, which indicated that "it's just a repeated pattern of you filing cases as soon as the County gets close to selling or dealing with property that's been tax defaulted . . . ." The court told Mr. McInnis that "the case doesn't look like you're filing in good faith."

Nor did the bankruptcy court see any hope of rehabilitation. It chastised Mr. McInnis for his multiple filings and noted that the creditor matrix listed only five creditors, none of which represented consumer debt. It stated, "[I]t just suggests to me that you're filing these cases repeatedly, solely to frustrate the County, and you just file them as – to get that stay that you think will apply. In this case, there actually wasn't a stay." Further, the court was suspicious of a prepetition transfer: "just before you filed the case, you transferred ten percent interest in this property to some third party, which really strongly suggests that you're attempting to hinder, delay or defraud your creditors."

The bankruptcy court stated that it would dismiss the case with a bar on refiling. It told him that if he needed to file a petition, he had to seek

approval from the court in advance.

In light of the dismissal, the bankruptcy court did not consider the Motion to Impose Stay, but it stated that, if it did, it would deny the motion because "it just doesn't make any sense on the facts of the case, so even if the case remained alive, you wouldn't have any benefit from it because you don't even have an automatic stay at this point, because you've applied for it; I haven't granted it; it's not there."

The bankruptcy court entered its order on the OSC ("Dismissal Order") dismissing the bankruptcy case with prejudice with a two-year bar on refiling. It ordered that Mr. McInnis "is barred for two (2) years, from the date of entry of this order, from filing a bankruptcy case in any chapter in the Northern District of California without prior court order authorizing such filing." It separately entered an order ("Stay Order") denying the Motion to Impose Stay as moot, given that the court dismissed the case.

Mr. McInnis timely filed his notice of appeal from the Dismissal Order, Stay Order, and Deadline Extension Order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in dismissing Mr. McInnis' case with a two-year bar on refiling.

(2) Whether the bankruptcy court erred in denying the Motion to Extend Deadline.

(3) Whether the bankruptcy court erred in denying the Motion to Impose Stay.

## STANDARDS OF REVIEW

We review the bankruptcy court's decision to dismiss a case under an abuse of discretion standard. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 611 (9th Cir. BAP 2014). The decision to dismiss a bankruptcy case with prejudice and impose a filing bar is also reviewed for an abuse of discretion. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1226 (9th Cir. 1999).

We similarly review for an abuse of discretion the bankruptcy court's ruling regarding extensions of time to file documents. *Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 155 (9th Cir. BAP 1996); *see Tillman v. Danielson (In re Tillman)*, BAP No. CC-07-1432, 2008 WL 8462961, at *1 n.7 (9th Cir. BAP July 17, 2008) (applying Rule 9006(b) standard to Rule 1007(c)).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. First, we consider de novo whether the bankruptcy court applied the correct legal standard. Then, we review the bankruptcy court's factual findings for clear error. *In re Sullivan*, 522 B.R. at 611 (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)).

10

We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in the record. *Id.* at 612 (citing *Hinkson,* 585 F.3d at 1262).

The bankruptcy court's "mootness determination is reviewed de novo, while the underlying factual determinations are reviewed for clear error." *Nat. Res. Def. Council v. Cty. of L.A.*, 840 F.3d 1098, 1102 (9th Cir. 2016). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

## DISCUSSION

On appeal, Mr. McInnis asks that we reverse the bankruptcy court's dismissal of his case, extend the deadline for him to file his bankruptcy documents, and impose or extend the automatic stay. He makes three arguments regarding the orders on appeal: (1) that the bankruptcy court failed to properly consider the evidence of his "emotional, physical, and financial situation," including his father's health and the impact of the recession, (2) that he is now able to complete the bankruptcy process, and (3) that he is properly using bankruptcy to protect himself against a "predatory creditor," the County.

**A.** **The bankruptcy court did not abuse its discretion in dismissing the chapter 13 case with a two-year bar on refiling.**

**1.** **The bankruptcy court has discretion to dismiss a case sua sponte for abuse of process.**

In relevant part, § 1307(c) provides that, upon a party's motion, "the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." The use of the word "may" indicates that dismissal of a case is within the discretion of the trial court. *See Schlegel v. Billingslea (In re Schlegel)*, 526 B.R. 333, 339 (9th Cir. BAP 2015).

"The Ninth Circuit has concluded that a debtor's bad faith in filing a chapter 13 petition is cause for dismissal under § 1307(c). In determining whether a chapter 13 petition has been filed in bad faith, a bankruptcy court must review the 'totality of the circumstances.'" *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002) (citing *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994)). The court may consider: "(1) whether the debtor misrepresented facts in her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed her chapter 13 petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present." *Olson v. Van Meter (In re Olson)*,

12

BAP No. NV-17-1168-LTiF, 2018 WL 989263, at *5 (9th Cir. BAP Feb. 5, 2018) (citing *In re Leavitt*, 171 F.3d at 1224).

When no party files a motion to dismiss, the court may dismiss a case on its own motion. Section 105(a) provides (in relevant part) that:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

§ 105(a). In other words, § 105(a) allows a bankruptcy court to dismiss a case sua sponte for abuse of process. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 771 n.8 (9th Cir. 2008) (stating that, although § 1307(c) provides for dismissal or conversion on request of a party in interest or the United States trustee, the bankruptcy court can do so on its own motion under § 105(a)); *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 868-69 (9th Cir. BAP 2004) (holding that "[s]ection 105(a) makes 'crystal clear' the court's power to act sua sponte where no party in interest or the United States trustee has filed a motion to dismiss a bankruptcy case" under § 1307).

### 2. The bankruptcy court considered Mr. McInnis' arguments and properly exercised its discretion to dismiss the case.

The bankruptcy court dismissed Mr. McInnis' bankruptcy case for an abuse of process, because it found that he was just using the bankruptcy

13

process to hinder or delay the County's efforts to sell the Subject Lots. We discern no error.

We have stated that, "[w]hen a bankruptcy filing is motivated by a desire to delay a creditor from enforcing its rights in an ongoing dispute, the filing is an abuse of process." *In re Bayati*, BAP No. CC-16-1072-KiTaKu, 2016 WL 5848892, at *4 (9th Cir. BAP Oct. 5, 2016), *appeal dismissed as moot*, 689 F. App'x 867 (9th Cir. 2017) (citing *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.)*, 40 F.3d 1084, 1090 (10th Cir. 1994)).

Mr. McInnis admits that he filed his petition solely to halt the sale of the Subject Lots. In his appellate brief, he states that the County's actions "caused [him] to repeatedly file bankruptcy hastily to stop their illegal unconstitutional land grab!" He even told the bankruptcy court that he repeatedly filed for bankruptcy "in an emergency to protect [his] asset from being stolen for 20 cents on the dollar." The bankruptcy court accurately recounted his history of bankruptcy filings on the eve of foreclosure sales, which were designed to frustrate a single creditor, rather than rehabilitate his consumer debt. It also noted that none of his eleven prior cases were successful and that most were dismissed for Mr. McInnis' failure to file required documents. We agree with the bankruptcy court that Mr. McInnis' repeated bankruptcy filings (with little effort and no apparent intention to complete the bankruptcy process) were improper and constituted an abuse of process warranting dismissal under § 105(a).

Similarly, the § 1307(c) analysis also provides a basis for dismissal for bad faith. The bankruptcy court found that Mr. McInnis unfairly manipulated the Bankruptcy Code; filed multiple unsuccessful bankruptcy cases, many of which were dismissed for failure to file documents; and only filed for bankruptcy protection to frustrate the County's collection efforts. These findings amply support the Dismissal Order. *See In re Leavitt*, 171 F.3d at 1224.

Mr. McInnis argues that the bankruptcy court failed to take into account his emotional, physical, or financial situation. He also argues that the bankruptcy court did not employ its discretion or consider his declarations and exhibits, including his discussion of the County's "political retribution" against him and its improper foreclosure tactics. But the bankruptcy court considered Mr. McInnis' arguments and exhibits, even those contained in a declaration filed half an hour before the OSC hearing. The bankruptcy court was aware of Mr. McInnis' position concerning his father's health, the recession's effect on his finances, and the County's alleged wrongdoing. It found that, given the totality of the circumstances, including the multiple unsuccessful bankruptcy filings intended to hinder or delay the County, Mr. McInnis was abusing the bankruptcy process. The bankruptcy court did not abuse its discretion.

Mr. McInnis further argues that we should reverse the Dismissal Order because his father's health has improved, the criminal charges were

dropped, and the recession is over, so he is "now able to complete the bankruptcy process from beginning to end." He represents that he cannot afford an attorney but will utilize "counseling, video tutorials, and self explanatory forms" to navigate the bankruptcy process on his own.

Mr. McInnis' history of repeated filings that went nowhere gives the lie to his proffered sincerity. Between June 2016 and May 2017, he filed four bankruptcy cases, all of which were dismissed for failure to file required documents. This most recent case followed the same dismal pattern. His story is also changing: he previously represented to the bankruptcy court that he was close to hiring an attorney and that he "just need[ed] to meet and decide on one of two candidates," which would allow him to complete the bankruptcy process, yet now claims that he can successfully manage his chapter 13 case on his own.

Moreover, even accepting Mr. McInnis' sincerity, the bankruptcy court did not permanently bar Mr. McInnis from ever filing for bankruptcy protection. Even during the two-year bar, it allowed Mr. McInnis to seek bankruptcy protection if he receives prior approval from the court. The bankruptcy court was within its discretion to dismiss Mr. McInnis' case.

3. **The bankruptcy court's orders confirm a two-year bar on refiling.**

Mr. McInnis does not challenge the imposition of a bar on refiling a bankruptcy petition but argues that the bar is only one year. He claims that

the bankruptcy court imposed a one-year bar at the hearing, but that "the transcriber didn't correctly hear and transcribe the judge[']s comments, because my notes state a 1 year ban . . . ."

We find no indication that the bankruptcy court intended to impose a one-year bar. The OSC raised the possibility of a two-year bar, ordering Mr. McInnis to show cause why his case should not be dismissed with a bar on refiling "for a period of two years . . . ." At the hearing, the bankruptcy court orally stated that it would impose a bar on refiling but did not specify its duration. The subsequent Dismissal Order (which was even titled "Order Dismissing Case with Prejudice and Two-Year Bar on Refiling") imposed in no uncertain terms a two-year bar on refiling.

Even if there was a conflict between the bankruptcy court's oral ruling and the Dismissal Order, the court's written order prevails over any oral statements in court. *See Rawson v. Calmar S.S. Corp.*, 304 F.2d 202, 206 (9th Cir. 1962) (stating that the court's oral "comment is superseded by the findings of fact. The trial judge is not to be lashed to the mast on his off-hand remarks in announcing decision prior to the presumably more carefully considered deliberate findings of fact"). We decline to modify the bankruptcy court's two-year bar on refiling.

**B.    The bankruptcy court did not abuse its discretion in denying the Motion to Extend Deadline.**

Mr. McInnis argues that the bankruptcy court erred in not extending

17

the deadline for him to file his schedules, plan, and other required documents. He raises the same issues already discussed – that the bankruptcy court did not take into account his emotional, physical, and financial situation. We again disagree.

Rule 1007(c) provides in relevant part that "the schedules, statements, and other documents required . . . shall be filed with the petition or within 14 days thereafter . . . ." Rule 1007(c). The court may grant an extension of time to file these documents, but "any extension of time to file schedules, statements, and other documents required under this rule may be granted only on motion for cause shown . . . ." *Id.* We have reiterated that "[e]xtensions of time under Rule 1007(c) are not handed out as a matter of course, but only upon a showing of cause." *In re Tillman*, 2008 WL 8462961, at *4.

The bankruptcy court determined that Mr. McInnis' reasons for needing an extension beyond the initial fourteen days were not "credible." It cited his eleven prior bankruptcy cases, many of which were dismissed for failure to file required documents. For the same reasons explained above, we hold that the bankruptcy court did not abuse its discretion in holding that Mr. McInnis failed to establish cause warranting an extension.

Moreover, in light of our affirmance of the Dismissal Order, we could not grant any effective relief even if we were to determine that the bankruptcy court erred in denying the Motion to Extend Deadline (and it

did not). The appeal of the Deadline Extension Order is thus moot.

**C. The bankruptcy court properly held that the Motion to Impose Stay was moot.**

Mr. McInnis does not directly address the Stay Order, which was premised on the dismissal of the bankruptcy case. We agree with the bankruptcy court that the Motion to Impose Stay was moot once the court dismissed the case.

A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).

The bankruptcy court properly denied the Motion to Impose Stay as moot, because it had dismissed Mr. McInnis' bankruptcy case and could not impose a stay in the absence of a bankruptcy case. *See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963, 964 (9th Cir. 1982) ("Once the bankruptcy was dismissed, a bankruptcy court no longer had power to order the stay . . . ."); *Pacifica Park Apartments, LLC v. U.S. Bank Nat'l Ass'n*, No. CIV-F-13-0164 AWI, 2013 WL 5348072, at

*3 (E.D. Cal. Sept. 23, 2013) ("The automatic stay in bankruptcy terminates at the time the case is dismissed. . . . No effect will be had by deciding this issue because the case will remain dismissed and the stay terminated by operation of law."). As we explained above, the bankruptcy court was within its discretion to dismiss the case. Thereafter, the bankruptcy court could no longer impose the automatic stay in a nonexistent case and could not grant Mr. McInnis his requested relief. It was proper to deny the Motion to Impose Stay as moot.

## CONCLUSION

The bankruptcy court did not abuse its discretion. We AFFIRM.